# EXHIBIT 7

*Rosado v. Barry Univ.*, *Inc.*, No. 1:20-cv-21813, Order (S.D. Fla. Sept. 9, 2021)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 20-21813-CIV-MARTINEZ-OTAZO-REYES**

MARLENA ROSADO, on behalf of herself
and all others similarly situated,

        Plaintiff,

    v.

BARRY UNIVERSITY, INC,

        Defendant.

_____/

**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
EXPENSES, AND FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE**

On July 13, 2021, Plaintiff Marlena Rosado filed her Unopposed Motion for Final

Approval of Settlement, Application for Service Award, Class Counsel's Application for

Attorneys' Fees, and Incorporated Memorandum of Law ("Motion for Final Approval"), seeking

Final Approval of the Settlement[1] in this Action.  In support of the Motion for Final Approval,

Plaintiff filed a Joint Declaration of Class Counsel, Jeff Ostrow, Anna Haac, and Daniel Warshaw,

and Declaration of the Settlement Administrator, Jennifer M. Keough of JND Legal

Administration, to enable the Court to evaluate the fairness, adequacy, and reasonableness of the

Settlement, as well as the reasonableness of the applications for a Service Award to Class

Representative and attorneys' fees and expenses to Class Counsel.

This matter came before the Court on August 27, 2021, for a Final Approval Hearing

pursuant to the Court's Preliminary Approval Order dated March 30, 2021.  [ECF No. 73].  The

Court carefully reviewed the filings related to the Settlement and heard argument on the Motion

---

[1] The capitalized terms in this Order shall refer to the defined terms in the Settlement Agreement.

for Final Approval. *See generally* [ECF No. 83].

After careful consideration of the presentation made by the parties, the Motion for Final Approval, and the declarations submitted in support of the Settlement, the Court concludes that the Settlement provides an excellent result for the Settlement Class under the circumstances and challenges presented by this lawsuit. The Settlement is fair, adequate, and reasonable, and an acceptable compromise of the Settlement Class Members' claims. The Settlement complies with Federal Rule of Civil Procedure 23(e); therefore, the Court grants Final Approval of the Settlement, certifies the Settlement Class, and awards attorneys' fees and costs to Class Counsel. The Court, however, denies the requested Service Award for the Class Representative.

## **BACKGROUND**

In response to the COVID-19 pandemic, Barry University ("Defendant" or "Barry") transitioned its Spring 2020 students from in-person to remote learning. [ECF No. 15] at 2. Plaintiff, an undergraduate student at Barry, alleged that in-person on-campus learning provides students with experiences and opportunities that are not available with remote learning. [ECF No. 15] at 1-2. When Barry declined to issue Plaintiff a pro-rated tuition refund, and a full refund for fees associated with services, amenities, housing, and meal plans only available to those living on campus and attending in-person classes, Plaintiff sued Barry for breach of contract or, in the alternative, unjust enrichment. *See* [ECF Nos. 1 & 15]. Plaintiff alleged that Barry "students have lost (and continue to lose) the benefits of the bargain for services and education they paid for but can no longer access or use." [ECF No. 15] at 2.

Barry moved to dismiss the Complaint and Plaintiff filed the operative Amended Complaint as of right. [ECF No. 15]. Barry again moved to dismiss, arguing Plaintiff failed to state a breach-of-contract claim because Plaintiff did not (1) allege the existence of an enforceable

contract for in-person on-campus learning or for a refund of fees when Barry did not provide the services associated with those fees; (2) allege a material breach of contract; or (3) incur recoverable damages. [ECF No. 21] at 6-18. Further, Barry argued Plaintiff failed to state a claim for unjust enrichment because Plaintiff (1) had an adequate remedy at law; and (2) could not establish that it was inequitable for Barry to retain full tuition and fees. *Id.* at 22-27. Barry also sought dismissal on the basis that the doctrines of impossibility and frustration of purpose barred Plaintiff's claims, and that Plaintiff ratified any supposed breach. *Id.* at 20-22.

In addition to moving to dismiss, Barry moved to strike Plaintiff's class allegations, arguing that the proposed class included impermissible members and that the claims were "fundamentally ill suited to class treatment." [ECF No. 46] at 3-4. The parties also submitted notices of supplemental authority, alerting the Court to new cases that addressed issues related to this dispute. [ECF Nos. 34, 35, 36, 41, 45]. To that end, Plaintiff moved to strike the housing contract included in one of Barry's notices of supplemental authority, arguing that it was not new evidence. [ECF No. 49] at 2. The Court denied Barry's motion to dismiss, finding that further factual development was required to determine the unique issues presented in this case, and, at the same time, denied as moot Plaintiff's motion to strike Barry's notice of supplemental authority containing the housing contract. [ECF No. 51]. The Court also denied Barry's motion to strike the class allegations, without prejudice to Barry re-raising the arguments in response to any motion for class certification. [ECF No. 55].

About two weeks after the Court denied Barry's motion to dismiss the Amended Complaint, the parties jointly moved to stay the case pending mediation, which the Court granted. [ECF Nos. 59, 61]. In anticipation of mediation, "the parties exchanged confidential information, including significant financial and other class-related data pertaining to tuition, housing and dining

fees, other ancillary fees, and various refunds and/or credits provided or sought by Barry." [ECF No. 66] at 2. About a month after mediation, the parties notified the Court that they had reached a settlement. *See id.*; [ECF No. 68].

Plaintiff then moved for preliminary approval of the Settlement Agreement, highlighting that the Settlement Class would obtain approximately 60% of their anticipated recoverable damages and that, of the related actions filed across the country, the parties are the first to reach a settlement. [ECF No. 71] at 1-2. The Settlement Agreement provides a $2,400,000 common fund for the benefit of the Settlement Class Members, defined as

> All Students who were enrolled during the Class Period as well as others who paid or were charged Tuition Fees, Room and Board Fees, Health Fees, Lab and Materials Fees, or Other Fees on behalf of such Students. Excluded from the Settlement Class is any Student who previously signed a release with Barry University relative to their enrollment, Barry University, its parents, subsidiaries, affiliates, officers and directors; and all judges assigned to this litigation and their immediate family members.

[ECF No. 78-1] at 5. Settlement Class Members are entitled to receive a cash payment, tuition credits for future classes, or a credit for unpaid balances due to Barry. [ECF No. 78-1] at 11-12.

The Court granted Preliminary Approval of the Settlement on March 30, 2021. [ECF No. 73]. In response, Barry provided the Settlement Administrator with the contact information of 6,077 individuals, identified as the Settlement Class Members. [ECF No. 78] at 9. The Settlement Administrator updated the Settlement Class Member contact information using data from the National Change of Address database. [ECF No. 78-3] at 3-4. The Settlement Administrator sent E-Mail Notice to 3,486 Current Students, and Postcard Notice via USPS first-class mail to 2,595 Former Students, as provided in the Settlement Agreement. [ECF No. 78] at 10; [ECF No. 78-3] at 4. When E-Mail Notice to four Settlement Class Members "bounced back" as undeliverable, the Settlement Administrator promptly sent Postcard Notice to those four Class Members. *Id.* The

E-Mail and Postcard Notice included the Settlement Website address, which contains the Long-Form Notice, Election Form, and other information regarding the Settlement. [ECF No. 78-1] at 15.

Notice informed the Settlement Class Members that they had the option to receive a tuition credit for future classes with Barry or a cash payment. [ECF No. 78-1] at 10-11. To make the election, Settlement Class Members must visit the Settlement Website and submit an election form. *Id.* at 12. If a Former Student – not enrolled at Barry at the start of the Spring 2021 term – does not make an election, Barry will send a cash payment to the Former Student's address on file. [ECF No. 78-1] at 4, 10. Current Students – enrolled at Barry at the start of the Spring 2021 semester – who do not make an election will receive a cash payment or tuition credit. *Id.* at 3, 10. Regardless of a Settlement Class Member's election or non-election, the Settlement provides Barry with the option to apply the Settlement Payment to any outstanding balance owed to Barry by a Settlement Class Member. *Id.* at 12.

The Settlement Agreement provides that Barry or the Settlement Administrator will distribute the Settlement Class Member Benefits, Service Award, and attorneys' fees and litigation costs within 15 days after the Count enters a Final Order approving the Settlement and dismissing the Action with prejudice. [ECF No. 78-1] at 10. Notably, if a cash refund issued to a Settlement Class Member is not negotiated within 90 days, the refund will revert to Barry "for the direct benefit of Barry University in a manner it sees fit in its discretion." *Id.* at 11-12. In exchange for the benefits conferred by the Settlement, all Settlement Class Members, and possible class members as described in the Settlement Agreement, release Barry from claims relating to this dispute. [ECF No. 78-1] at 16-17.

At the Final Approval Hearing, Class Counsel affirmed, as represented in its Motion for

Final Approval, that 100% of the Settlement Class received notice of the Settlement. [ECF No. 78] at 10. Class Counsel also confirmed that only one Settlement Class Member opted-out and there have been no objections to the Settlement. *See* [ECF No. 78] at 11. As explained below, the Court finds that the parties effectively administered the Notice Program, which put the Settlement Class Members on notice of the terms of the Settlement Agreement, the procedures for objecting to and opting out of the Settlement, and the rights the Settlement Class Members would forfeit by remaining a part of the Settlement.

## DISCUSSION

Federal Rule of Civil Procedure 23(e) "requires that a settlement or compromise of a class action be approved by the district court." *Bennett v. Behring Corp.*, 737 F.2d 982, 985 (11th Cir. 1984). When evaluating whether approval is appropriate, the Court recognizes that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 U.S. Dist. LEXIS 129955, *13 (S.D. Fla. July 13, 2021) ("As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources."). Moreover, "[t]he court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 U.S. Dist. LEXIS 181656, *12 (S.D. Fla. Oct. 1, 2020) (citation and internal quotation marks omitted).

Rather, in deciding to enter Final Approval of the Settlement, the Court considers whether (1) the Court has jurisdiction over the subject matter and parties; (2) the Notice Program was

reasonably calculated to apprise interested parties of the action and afford them an opportunity to object; (3) the settlement is fair, reasonable, and adequate; and (4) Class Counsel's request for attorneys' fees and litigation expenses is reasonable. The Court finds that each of these inquiries are satisfied here. The Court, however, will deny the Service Award request due to recent Eleventh Circuit precedent. *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-61 (11th Cir. 2020).

### 1.  The Court's Exercise of Jurisdiction is Proper

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).   The Court also has personal jurisdiction over the parties, [ECF No. 15] at 4, and personal jurisdiction over the Settlement Class Members because "its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard." *See David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278-GOLD/McALILEY, 2010 U.S. Dist. LEXIS 146073, *6 (S.D. Fla. Apr. 15, 2010).

### 2.  The Settlement Class Received the Best Notice Practicable & Notice was Reasonably Calculated to Inform Class Members of Their Rights

Class actions certified under Federal Rule of Civil Procedure 23(b)(3) require members "receive the best notice that is practicable under the circumstances." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(c)(2)(B)). Moreover, Rule 23(e) "requires absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised" and receive notice that is "reasonable calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations omitted).

As explained above, notice of the Settlement in the form approved by the Court in its Preliminary Approval Order was sent to all Settlement Class Members via e-mail or USPS first-class mail. [ECF No. 78] at 9-10. The Settlement Website, containing the approved Long Form

Notice, went active the date the E-mail and Postcard Notice were sent. *Id.* at 10. As of July 8, 2021, 100% of the Settlement Class Members received E-mail or Postcard Notice. *Id.* The Notice Program, among other information, described the dispute in basic terms, how to make an election for a Settlement Class Member Benefit, how to opt-out or object to the Settlement, and stated that if the Class Member did not request to be excluded from the Settlement, the Class Member would release his right to bring any claim covered by the Settlement. [ECF No. 78-3] at Exs. B-C. The Notice Program also informed the Settlement Class Members that at the Final Approval Hearing, the Court would consider whether to grant Class Counsel up to 33.33% of the Settlement Fund for attorneys' fees, and to reimburse litigation costs. *Id.* Accordingly, the Court finds that the Notice Program was "the best practicable, [and] 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (citations omitted) (holding that "notice should describe the action and the plaintiffs' rights in it").

### 3. The Settlement is Fair, Adequate, and Reasonable

To approve the Settlement, the Court must find it fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). "Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement." *Janicijevic v. Classica Cruise Operator, Ltd.*, 20-cv-23223-BLOOM/Louis, 2021 U.S. Dist. LEXIS 95561, *9-10 (S.D. Fla. May 19, 2021) (citing *Leverso v. Southtrust Bank*,

18 F.3d 1527, 1530 n.6 (11th Cir. 1994)).  When evaluating a settlement, "the district court may rely upon the judgment of experienced counsel for the parties."  *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012).  If there is no "fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"  *Id.* (citation omitted).   The Court addresses each relevant factor below.

First, there is "no evidence or even allegations of collusion on the part of counsel in this case." *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 n.3 (S.D. Fla. 2001).  The parties worked extensively with mediator D. Andrew Byrne to resolve this dispute by participating in an all-day mediation session and continued to engage in settlement discussions for a month after the mediation session. [ECF No. 78] at 4.  Moreover, the parties actively litigated the case; Defendant filed dispositive motions to dismiss, [ECF Nos. 12, 21], and the parties exchanged motions to strike.  [ECF Nos. 46, 49].  Because the parties negotiated at arm's length and proceeded adversarially, the Court finds that the settlement is not the product of collusion.  *See Saccoccio*, 297 F.R.D. at 692 (noting that "[w]here the parties have negotiated at arm's length," and "the case proceeds adversarially" the Court should not find that the settlement was a product of collusion); *Ferron*, 2021 U.S. Dist. LEXIS 129955, *24 ("The fact that the Parties aggressively disputed the issues in the case, engaged in an all-day mediation session overseen by an experienced and well-respected mediator, and only reached an agreement after continued mediation discussions, also overseen by the mediator, forms the basis for the Court's finding that the Settlement was reached through arm's-length negotiations and was not the result of fraud or collusion.").

Second, the complexity, expense, and duration of litigation supports approving the Settlement.  Although the claims asserted are not particularly unique, litigating the complex factual and legal issues presented by COVID-19 – the basis of this dispute – would have been difficult

and time-consuming. This is especially true here, where recently enacted legislation called into question the viability of Plaintiff's claims. [ECF No. 78] at 15 (citing § 768.39(1), Fla. Stat. (2021) ("The Legislature [] finds that lawsuits against educational institutions based on their efforts to provide educational services while keeping students, faculty, staff, and communities safe during the COVID-19 public health emergency are without legal precedent."). Rather than litigate the applicability of section 768.39, Florida States, which was enacted after Plaintiff filed the instant lawsuit, or the constitutionality of the new legislation, the Settlement provides Class Members with approximately 60% of their total likely recoverable damages. [ECF No. 78] at 15-17.

Third, the Court finds that "counsel had adequate appreciation of the merits of the case before negotiating." *Jairam*, 2020 U.S. Dist. LEXIS 181656, at *14-15 (citation omitted). Prior to mediation, the parties engaged in informal discovery and fully briefed a dispositive motion to dismiss on the merits. [ECF No. 78] at 3-4. In addition, the parties were informed on how the Legislature and courts across the country were responding to disputes arising out of COVID-19. *See* [ECF No. 34, 35, 36, 38, 41, 45, 50]. Considering counsels' arm's-length negotiations and their knowledge of the developing law on disputes arising out of COVID-19, the Court finds that Plaintiff was "sufficiently informed to negotiate, execute, and recommend approval of this Settlement." *See Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, No. 16-CV-80028, 2016 U.S. Dist. LEXIS 147252, *6 (S.D. Fla. Oct. 21, 2016); *see also In re Checking Account Overdraft Litig.*, No. 10-CV-22190, 2020 U.S. Dist. LEXIS 142012, *31 (S.D. Fla. Aug. 10, 2020); *Ferron*, 2021 U.S. Dist. LEXIS 129955, at *39 (noting that "although it may appear the matter settled early, the parties conducted a tremendous amount of behind-the-scenes investigation and pre-suit discovery" and those "efforts provided Plaintiff and Class Counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case and, subsequently, to negotiate and

10

finalize the Settlement proposed to the Court").

The fourth and fifth factors – the probability of Plaintiff's success on the merits and the range of possible recovery – also warrant final approval. When evaluating these factors, Plaintiff's "likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Saccoccio*, 297 F.R.D. at 692. Here, it is not clear whether Plaintiff would have prevailed at trial. Indeed, as described above, recent Florida legislation may have precluded relief altogether. In face of this litigation risk, in addition to those Plaintiff would have faced at the class-certification stage, the Settlement is a fair compromise. *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 ("When the potential legal difficulties of plaintiff's case . . . are added to the unpredictability of a lengthy and complex jury trial, the benefits to the class of the present settlement become all the more apparent."). Settlement Class Members will receive a cash payment, tuition credit, or credit to unpaid balances owed to Barry. [ECF No. 78-1] at 11-12. Given that 100% of the Settlement Class Members received notice of the Settlement, the Settlement Payments offer real and immediate benefits. [ECF No. 78] at 10.

Lastly, the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement also weigh in favor of approval. Class Counsel "strongly endorse[s] the Settlement." [ECF No. 78] at 17. Further, there has been no opposition to the Settlement and only one opt-out. *Id.* at 10-11. The "great weight" the Court gives "to recommendations of counsel for the parties, given their considerable experience in this type of litigation," and the lack of opposition to the Settlement, is evidence of the fairness, reasonableness, and adequacy of the Settlement. *See Jairam*, 2020 U.S. Dist. LEXIS 181656, at *18 ("Here, there were no objections filed to the Settlement. This lack of opposition weights strongly in favor of the Court's approval of the Agreement."); *M.D. v. Centene Corp.*, No. 18-cv-22372-JB, 2020

U.S. Dist. LEXIS 104495, *19 (S.D. Fla. June 12, 2020) ("After Notice was provided, there were

no objections to the Settlement and only one opt-out request was received. This positive response

from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement.")

(internal citation omitted).

In sum, considering the relevant factors, the Court finds that the Settlement is fair,

adequate, and reasonable.

### 4. The Settlement Class

The Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied when it

granted Preliminary Approval to the Settlement.  [ECF No. 73].  The Court reiterates its findings,

for settlement purposes only, that: (a) the Settlement Class as defined is so numerous that joinder

of all members is impracticable; (b) there are questions of law or fact common to the Settlement

Class; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class; (d) the Class

Representative and Class Counsel will fairly and adequately protect the interests of the Settlement

Class Members; (e) Plaintiff alleges that Defendant has acted on grounds that apply generally to

the class; (f) the questions of law or fact common to the Settlement Class predominate over the

questions affecting on individual Settlement Class Members; and (g) certification of the Settlement

Class is superior to the other methods for the fair and efficient adjudication of the controversy.

The Court, therefore, certifies the Settlement Class as defined in the Settlement Agreement.

### 5. The Application for a Service Award for the Class Representative is Denied

Class Counsel requests a Service Award of $5,000 for the Class Representative.  [ECF No.

78] at 21-23.  Recently, the Eleventh Circuit held that "[a] plaintiff suing on behalf of a class can

be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot

be paid a salary or be reimbursed for his personal expenses."  *Johnson v. NPAS Sols., LLC*, 975

F.3d 1244, 1257 (11th Cir. 2020). And that "the modern-day incentive award for a class representative is roughly analogous to a salary[.]" *Id.* In light of *Johnson*, the Court denies the Service Award. The Court is not persuaded that the case law cited by Class Counsel permits the Court to approve the Service Award here. *See Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *8-9 (N.D. Ga. Mar. 8, 2021); *Henderson v. Emory University*, No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020). Even though the Eleventh Circuit has withheld issuance of the mandate in *Johnson* and is accepting briefing on rehearing, the Court is still bound by *Johnson* until it is "reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by th[e] [Eleventh Circuit] sitting en banc." *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992). The Court recognizes that some courts in this District have reserved jurisdiction to allow Class Counsel to renew their request for a service award should *Johnson* be reversed. *See Janicijevic*, 2021 U.S. Dist. LEXIS 95561, *28. The Court will not do so here. Allowing Class Counsel to renew its request for the Service Award in this case may cause delays in distribution of the Settlement Payment or increase Settlement Administration costs.

6. **Class Counsel's Application for Attorneys' Fees and Litigation Expenses is Granted**

Class Counsel requests an award of attorneys' fees of $800,000, equivalent to 33.33% of the Settlement Fund. [ECF No. 78] at 23. It also requests reimbursement of out-of-pocket costs and expenses totaling $8,494.79 incurred in connection with the prosecution and settlement of the Action. *Id.* The Notice Program informed the Settlement Class Members that Class Counsel would seek up to 33.33% of the Settlement Fund and would also seek reimbursement of litigation costs to the attorneys and the Settlement Administrator. [ECF No. 78-3] at Exs. B-C. No Settlement Class Member objected to Class Counsel's request for fees or reimbursement of litigation expenses.

The Eleventh Circuit considers several factors when evaluating whether a attorneys' fees award is reasonable: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; [and] (12) awards in similar cases." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3 (11th Cir. 1991). In addition, "[t]he United States Supreme Court, the Court of Appeals for the Eleventh Circuit and this Court, have all expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement." *Janicijevic*, 2021 U.S. Dist. LEXIS 95561, at \*20.

Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims on an entirely contingency-fee basis. The case involved difficult factual and legal issues arising from a global pandemic. Given the evolving law on disputes arising from COVID-19, Class Counsel faced a significant risk of nonpayment. Despite the strong defenses presented by Barry, Class Counsel swiftly obtained an excellent result for the Settlement Class Members. The Settlement requires Barry make a $2,400,000 common fund available for the benefit of the Settlement Class to be distributed in cash payments, tuition credits, or to satisfy outstanding balances held by Class Members at Barry. The Court also recognizes that suing a university for adjusting to the COVID-19 pandemic to safeguard the health of its students and faculty is not the most desirable case. Furthermore, courts consistently award one-third of a settlement fund in attorneys' fees when Class Counsel litigates on a purely contingency-fee basis and obtains a

14

common-fund settlement. *See Janicijevic*, 2021 U.S. Dist. LEXIS 95561, *24 (awarding 30% of common-fund settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317-SEITZ/KLEIN, 2005 U.S. Dist. LEXIS 43082, *21 (awarding 33.33% of the common-fund settlement); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV-COHN/TORRES, 2012 U.S. Dist. LEXIS 153786, *4 (S.D. Fla. Sept. 26, 2012) (recommending award of 33.33% of common-fund settlement where class obtained a settlement of more than 65% of their losses), *aff'd*, 2012 U.S. Dist. LEXIS 153500, at *3 (S.D. Fla. Oct. 25, 2012).

Accordingly, the Court finds that the requested fees and expenses are reasonable and shall be paid from the Settlement Fund as set forth in the Settlement Agreement. Except as expressly provided herein, each Party shall bear its own fees and costs.

**7.** **Release of Claims & Dismissal**

No one objects to the Settlement and only one Settlement Class Member, Ingrid Bethune, requested exclusion from the Settlement through the opt-out process approved by this Court. Accordingly, except for Ingrid Bethune, this Court hereby dismisses this Action on the merits and with prejudice as to all Settlement Class Members' Released Claims. To be clear, Ingrid Bethune is not bound by the terms of this Final Approval Order.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Barry from claims related to the subject matter of the Action. Settlement Class Members shall be entitled to receive the benefits of the Settlement in accordance with the procedures set forth in the Agreement. Having found that the Settlement Class Members have been properly certified and received proper Notice under the Notice Program, all Settlement Class Members, other than Ingrid Bethune, shall be barred and enjoined from (a) further litigation in this case and (b) filing or taking any action directly or indirectly to commence, prosecute,

pursue, or participate on an individual or class or collective action basis any action, claim, or proceeding against Defendant in any forum in which any of the claims released in the Agreement are asserted or which in any way would prevent any such claims from being extinguished. Moreover, all Settlement Class Members who have not opted out of the Settlement shall be bound by all determinations and judgments in this Action concerning the Agreement whether favorable or unfavorable to the Settlement Class Member.

## 8. **Additional Provisions of the Settlement Agreement**

Without affecting the finality of the Final Approval Order in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement; (b) this Action until the judgment contemplated herein has become effective and each and every act agreed to be performed by the Parties has been performed; and (c) the Parties and all parties to the Settlement Agreement for the purpose of enforcing and administering the Agreement.

In the event that the Settlement does not become effective in accordance with its terms, then the judgment contemplated herein shall be rendered null and void and be vacated and the Agreement and all orders entered in connection therewith shall be rendered null and void, the Settlement Class shall be decertified, all of Defendant's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to Defendant and Plaintiff's Complaint shall be reinstated as it existed prior to the making of the Agreement. In that case, all communications, documents, filings, negotiations, and other actions taken by the Parties to negotiate and pursue a settlement through the Settlement Agreement shall be considered confidential settlement communications which cannot be used in evidence by any Party against another Party.

Nothing in this Final Approval Order or the Agreement shall be construed as an admission or concession by either Party. Defendant has denied all of Plaintiff's allegations and continues to deny such allegations. Plaintiff continues to believe her allegations have merit. The Settlement and this resulting Final Approval Order represent a compromise of disputed allegations.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) appoints Plaintiff as Class Representative; (3) appoints as Class Counsel the law firms and attorneys listed in Paragraph 1(c) of the Settlement Agreement; (4) awards Class Counsel attorneys' fees in the amount of $800,000.00, plus litigation expenses in the amount of $8,494.79; (5) directs Class Counsel, Plaintiff, and Defendant to implement and consummate the Settlement Agreement pursuant to its terms and conditions; (6) retains continuing jurisdiction over Plaintiff, the Settlement Class Members, and Defendant to implement, administer, consummate, and enforce the Settlement and this Final Approval Order; and (7) denies the Service Award request.

Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter Final Judgment dismissing the Action with prejudice in a separate document and direct the Clerk of this Court to close the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of September, 2021.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

17