# EXHIBIT 9

*Alexander v. Florida International University Board of Trustees*, Case No. 2021-009869-CA-01(44), Order (Fla. 11th Cir. Ct. Dec. 30, 2021)

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

REBECCA ALEXANDER et al                    CASE NO. 2021-009869-CA-01 (44)
on behalf of himself and all others
similarly situated,

          Plaintiff,                    CLASS REPRESENTATION

v.

FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES,

          Defendant.
_____/

**OMNIBUS ORDER ON PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION AND DEFENDANT'S MOTION TO DISMISS**

    **THIS CAUSE** came before the Court on Plaintiff's Motion for Class Certification and Defendant's Motion to Dismiss. After considering the motions, oppositions thereto, the evidence and testimony presented, and the arguments of counsel, and being otherwise fully advised in the premises, the Court makes the following findings of fact and conclusions of law:

**Factual and Procedural Background**

    Plaintiffs Alexandre and Fagundez, who were students at Florida International University during the Spring, Summer, and Fall 2020 academic semesters, filed this class action against FIU on April 22, 2021. Like all public universities in Florida, FIU charges its students fees pursuant to section 1009.24, Florida Statutes, which governs the types, amounts, and uses of the student fees that FIU may charge, and pursuant to the Florida Board of Governors' ("FBOG") Regulations, as well as the University's own regulations. *See* § 1009.24, Fla. Stat.; *see also* FBOG Regs. §§ 7.001, 7.003. Other "associated fees," which are paid with tuition and are paid by every student, include fees for health services or athletic services. § 1009.24(4)(d)-(13), Fla. Stat. FIU also charges other,

1

"non-associated" fees which must be "based on reasonable costs of services." § 1009.24(14), Fla. Stat. For example, if FIU charges a "Transportation Access Fee," as it charged Plaintiffs and Class members in this case, the fee must have "appropriate input from students" and be used "to support the university's transportation infrastructure and to increase student access to transportation services." FBOG Regs. § 7.003(10). Other "non-associated" fees include laboratory fees and parking fees. *Id.*

For each semester, FIU provides its students with a Statement of Charges, which is an official document from the University that documents "[the student's] tuition, fees, and/or payments" and provides "a detailed breakdown of a student's tuition and fees, course and class schedule, payments, and financial aid for a specific semester. The Statement of Charges identifies the fees owed by the student and includes a description of each fee, the services that each fee funds, and the amount of each fee that the student, including Plaintiffs and all Class members, were required to pay to complete course registration and avoid penalties such as late charges.

As with all Class members, Plaintiffs paid their tuition and the fees charged in accordance with the statutes and regulations referenced above. Plaintiffs' Statements of Charges identify the specific fees that were paid, which include an "Athletic Fee," a "Health Fee," and a "Transportation Access Fee" for the specified semester and the amount of money that Plaintiffs were billed for each fee. *See* Alexandre Decl. ¶¶ 4, 7–9, 11, 17; Fagundez Decl. ¶¶ 4, 7–9, 13, 15. The Statements also confirm that Plaintiffs paid the fees. *Id.* If Plaintiffs and Class members do not pay these fees, they could be subject to penalties such as academic suspension, withholding of student records and transcripts, and additional fees if sent to collections. On March 11, 2020, in response to the COVID-19 pandemic, FBOG directed all universities to implement a process to immediately transition to remote instruction. All putative Class members, including Plaintiffs, were transitioned to online learning. Around this time, FIU closed its campuses and totally or substantially ceased

to provide on-campus services. Due to the campus closures, Plaintiffs and Class members no longer had access to, nor received any benefits from, the services and facilities for which they paid with their fees.

FIU's campuses remained closed through the end of the Summer 2020 semester. With the campuses closed, services usually available to students, such as athletics, on-campus resources and access to facilities, on-campus activities, and transportation and parking services were not available to Plaintiffs or Class members. In the Fall 2020 semester, some classes returned to in-person learning, but FIU continued to provide students with substantially reduced services and limited access to many facilities. Despite substantially reducing or eliminating the services and access to facilities funded by the Fees during these semesters, FIU continued to charge students each fee and has not reimbursed students for the portion of their Spring 2020 fees that are attributable to the time when the campuses were closed, nor for the amounts that students paid during the remaining semesters in 2020.

Plaintiff filed their first amended complaint (the "FAC") on May 28, 2021. Plaintiffs allege that FIU charged and refused to refund fees they paid for services that FIU did not provide to students during the 2020 semesters due to the closure of its campuses in response to the COVID-19 pandemic. Based on these allegations, Plaintiffs assert claims on behalf of themselves and other FIU students against FIU for breach of contract or, in the alternative, unjust enrichment. On August 2, 2021, FIU responded to Plaintiffs' motion for class certification by moving to strike the class allegations of the FAC (the "Motion to Strike"). Defendants argue that Plaintiff's FAC should be dismissed due to various legal defenses that would apply equally to all putative class members. However, as the Florida Supreme Court explained, Rule 1.220 of Florida's Rules of Civil Procedure "does not demand" an evidentiary hearing "and certainly not all situations require it." *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 105 (Fla. 2011); *see also Biza Corp. v. Galway*

3

*Bay Mobile Homeowners Ass'n, Inc.*, 304 So. 3d 1227, 1232 (Fla. 3d DCA 2019) (rejecting argument "that the trial court erred in failing to conduct an evidentiary hearing" before ruling upon a motion for class certification). The Court also notes that although FIU argues that class certification is "premature," it has not denied any of the factual allegations of the FAC. The Court makes its decision to certify or not certify the Class based on the documentary evidence and the uncontested substantive allegations of the FAC, which "are accepted as true." *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 591 (N.D. Fla. July 22, 1998); *see also Waggoner v. Barclays PLC*, 875 F. 3d 79, 86 n.5 (2d Cir. 2017) (accepting the complaint's allegations as true in a class certification motion).

    In support of their Class Motion, Plaintiffs submitted declarations which describe their experience as a student at the university during the Spring, Summer and Fall semesters in 2020. The declarations show that Plaintiffs were charged and paid student fees when they registered for courses at FIU. *See* Alexandre Decl.  ¶¶ 4, 7–9, 11, 14, 17–18; Fagundez Decl. ¶¶ 2, 4, 7–9, 12–13, 15-16. The declarations also show that, as with all students, Plaintiffs received a Statement of Charges from the university that lists the fees that were charged and that were paid during each semester. *See* Alexandre Decl., Exhibits 1-3; Fagundez Decl. ¶ 3-4, 13, 15. Plaintiffs' declarations also describe the circumstances surrounding the campus closures due to the COVID-19 pandemic, including the availability of on-campus services to students. *See* Alexandre Decl. ¶¶ 5-6, 11, 15-16; Fagundez Decl. ¶¶ 5-6, 11, 14.

    Plaintiffs also submitted official documents from the university in support of their Class Motion. The documents show the number of students that were enrolled at the university during the semesters in 2020. *See FIU Factbook - All: Student Headcount Factbook*, available at https://opir.fiu.edu/factbook/dash.htm. These documents also confirm that all students received a Statement of Charges from the university upon registration. *See Statement of Charges*, FLA. INT'L

UNIV., available at https://onestop.fiu.edu/finances/pay-for-tuition/statement-of-charges. The Court takes judicial notice of the university's documents as undisputed facts whose accuracy can be readily determined by unquestionably accurate sources. § 90.202(11)-(12), Fla. Stat.; *see Nationwide Mut. Fire Ins. Co. v. Darragh*, 95 So. 3d 897, 899–900 (Fla. 5th DCA 2012).

**The Proposed Class:**

Plaintiffs seek to certify the Class of: All students enrolled at Florida International University who paid Fees to Florida International University for services, facilities, resources, activities, and/or events that were not provided to students during the Spring 2020, Summer 2020, and Fall 2020 academic semesters.

**The Requirements of Fla. R. Civ. P.  1.220**

Under Rule 1.220(a), the Court must first conclude that: the members are so numerous that separate joinder of each member is impracticable [*numerosity*]; the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class [*commonality*]; the claim or defense of the representative party is typical of the claim or defense of each member of the class [*typicality*]; and the representative party can fairly and adequately protect and represent the interests of each member of the class [*adequacy*].

**Numerosity**

To satisfy numerosity, the "plaintiff need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *Anderson v. Bank of South, N.A.,* 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. Jay Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. 1981)). No specific number and no precise count are needed to sustain the numerosity requirement. *See Toledo v. Hillsborough County Hosp. Auth.,* 747 So. 2d 958, 961

(Fla. 2d DCA 1999). A class of forty people or more is generally considered adequate for such purpose. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Florida courts have certified classes of homeowners or renters numbering as few as 100. *See Smith v. Glen Cove Apts. Condos. Master Ass'n*, 847 So. 2d 1107, 1109-10 (Fla. 4th DCA 2003); *Wittington Condo. Apts., Inc. v. Braemar Corp.*, 313 So. 2d 463, 468 (Fla. 4th DCA 1974); *cf. Estate of Bobinger v. Deltona Corp.*, 563 So. 2d 739, 743 (Fla. 2d DCA 1990) ("We note that classes as small as 25 have fulfilled the numerosity requirement."). FIU concedes that the proposed Class, which includes all students enrolled at the university during the Spring, Summer, and Fall semesters in 2020 who paid fees as defined in the FAC, satisfies the numerosity requirement. *See* Defendant's Answers to Plaintiff's First Set of Interrogatories, at 5 ("FIU does not contest numerosity in this case"); *see also FIU Factbook - All: Student Headcount Factbook*, available at https://opir.fiu.edu/factbook/dash.htm. The proposed class meets the numerosity requirement of Rule 1.220(a)(2).

The proposed Class is also ascertainable. A proposed class is ascertainable if "it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021); *see also BJ's Wholesale Club, Inc. v. Bugliaro*, 273 So. 3d 1119, 1121 (Fla. 3d DCA 2019) (holding class is ascertainable when "the class definition contains objective criteria that allow for class members to be identified"). The proposed Class is objectively defined to include only those students who may assert claims for damages against FIU as a consequence of their payment of fees for services and access to facilities that FIU did not provide because of its decision to shut down its campuses and on-campus services and facilities. Further, the Statements of Charges, which the university sends to all students, show which fees were charged and paid by Plaintiffs as well as all Class members. *See Statement of Charges*, FLA. INT'L UNIV., https://onestop.fiu.edu/finances/pay-for-tuition/statement-of-charges; *see also*

Alexandre Decl., Ex.'s 1-3; Fagundez Decl., Ex.'s 1-3. Thus, the class members can be identified "utilizing class-wide data that exists within [FIU's] records." *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 286 (M.D. Fla. 2017).

**Commonality**

"The primary concern in determining commonality is whether the representative members' claims arise from the same course of conduct that gave rise to the other claims, and whether the claims are based on the same legal theory." *Smith v. Glen Cove Apts. Condos. Master Ass'n, Inc.*, 847 So. 2d 1107, 1110 (Fla. 4th DCA 2003), *approved sub nom. Sosa*, 73 So. 3d at 91. "The threshold of the commonality requirement is not high. A mere factual difference between class members does not necessarily preclude satisfaction of the commonality requirement. Individualized damage inquiries will also not preclude class certification." *Sosa,* 73 So. 3d at 107 (internal citations omitted). "[T]he commonality prong only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest." *Id.*

There is no dispute that [FIU] cancelled its in-person spring 2020 semester classes for all class members, and neither refunded nor abated any class members' . . . fees." See *Wright v. Southern N.H. Univ.*, No. 20-cv-609-LM, ECF No. 37 (D. N.H. Sep. 22, 2021) (granting final approval of settlement class of students and former students who paid tuition and fees for in-person educational services during SNHU's spring 2020 semester based on conclusion that the class meets all the requirements of Rule 23(a) and (b)(3)). These common undisputed facts underlie Plaintiffs' and Class members' common claims for breach of contract and unjust enrichment. Further, Plaintiffs' and all Class members' claims will depend on answering the same legal questions. By examining Plaintiffs' documents, including the Statements of Charges which is provided to all students, the Court will be able to determine whether FIU "breached its contractual duty and

violated [Florida law]." *Venerus v. Avis Budget Car Rental LLC*, 723 Fed. App'x 807, 815 (11th Cir. 2018) (holding that district court erred by concluding that commonality was not satisfied because the putative class did not have "a single form rental contract" because common questions could be decided by looking only to the written agreements provided to Plaintiffs and all Class members).

The fact that FIU may have charged different amounts for the fees to certain students does not negate commonality because "the issue is not whether the . . . fees were the same, but whether or not [FIU's] practice" constituted a breach of contract or unjust enrichment. *Olen Props. Corp. v. Moss*, 981 So. 2d 515, 520 (Fla. 4th DCA 2008), *approved sub nom. Sosa*, 73 So. 3d at 91 (affirming order granting class certification of breach of contract claims). To the contrary, FIU's common course of conduct as to all Class members is sufficient to satisfy the requirements of Rule 1.220(a)(2). *See In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) (concluding commonality satisfied in class action asserting breach of contract and unjust enrichment claims because plaintiffs "provided evidence of a common corporate policy or practice"); *Nolan v. Integrated Real Estate Processing, LP*, No. 3:08-cv-642-J-34HTS, 2009 WL 10670779 (M.D. Fla. Sept. 9, 2009) (certifying class based on claims of, among others, breach of contract and unjust enrichment, because "common issues of law and fact arise from the Defendant's alleged practice" of unfairly profiting from class members); *Morgan v. Coats*, 33 So. 3d 59, 64–65 (Fla. 2d DCA 20101) (reversing order denying class certification in lawsuit alleging claims for breach of contract and unjust enrichment because "the complaint alleges a scheme or common course of conduct" by defendant against class members) (quoting *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 673–74 (M.D. Ga. 1996)). Further, once a common course of conduct is established, individual defenses, such as FIU's sovereign immunity defense, are insufficient to

defeat commonality. *See McFadden v. Staley*, 687 So. 2d 357, 359 (Fla. 4th DCA 1997). This Court concludes Plaintiffs have clearly satisfied commonality.

Typicality

The key typicality inquiry is whether the class representative possesses the same legal interest and has endured the same legal injury as the putative class members. *Sosa.*, 73 So. 3d at 91 (citing *Morgan v. Coats,* 33 So. 3d 59, 65 (Fla. 2d DCA 2010). The typicality requirement is satisfied when there is a strong similarity in the legal theories upon which those claims are based and when the claims of the class representative and the class members are not antagonistic to one another. *See Morgan,* 33 So. 3d at 65 ("The typicality requirement may be satisfied despite substantial factual differences... when there is a strong similarity of legal theories.'").

Here, Plaintiffs and Class members "all suffered the same injury": not receiving the services and access to facilities for which they paid. *Morgan*, 33 So. 3d at 65. Plaintiffs' "claim[s] [are] [also] based on the same legal theories as claims of the rest of the class members: breach of contract . . . and unjust enrichment." *Id.* Thus, Plaintiffs satisfy the typicality prong "by meeting the minimal requirement of showing that [they] possess[] the same interest and ha[ve] suffered the same type of injury as the result of the class members." *Id.* Plaintiffs paid an "Athletic Fee," "Health Fee," and "Transportation Access Fee" yet were not provided with the services that those fees are required to fund. *See* Alexandre Decl. ¶¶ 7–9, 11, 17; Fagundez Decl. ¶¶ 7-9, 11, 13, 15. "The fact that the *extent* of [their] injury (i.e., damages) might vary from that of the other class members does not bar a finding of typicality in this case." *Id.* (citing *Ouellette v. Wal-Mart Stores, Inc.*, 888 So. 2d 90, 91 (Fla. 1st DCA 2004)); *see also Wright*, ECF No. 31, at 4 ("Nothing in the record suggests that plaintiff's experience is different in any material respect from that of the putative class members in general"). Moreover, what amount FIU must pay Plaintiffs or Class members in damages is a trial issue involving damages not liability, and therefore, is not a bar to

certification of a (b)(3) class. *See Sosa*, 73 So. 3d at 112; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Because FIU's uniform practice of shutting down its campuses and on-campus services to all students during the semesters in 2020 affected Plaintiffs and all Class Members, the typicality requirement is satisfied.

**Adequacy**

To grant class certification, a trial court must also determine that the class representative satisfies the adequacy requirement of Rule 1.220(a)(4), *i.e.*, it must find that "the representative party can fairly and adequately protect and represent the interests of each member of the class." Fla.R. Civ. P. 1.220(a)(4). "The 'adequacy of representation' requirement is met if the named representatives have interests in common with the proposed class members and the representatives and their qualified attorneys will properly prosecute the class action." *Broin v. Phillips Morris Cos.*, 641 So. 2d 888,892 (Fla. 3d DCA 1994) (quotation omitted). The trial court's inquiry concerning whether the adequacy requirement is satisfied is two-fold. *See City of Tampa v. Addison*, 979 So. 2d 246, 255 (Fla. 2d DCA 2007). The first prong concerns the qualifications, experience and ability of class counsel to conduct the litigation. The second prong pertains to whether the class representative's interests are antagonistic to the interests of the class members. *Id.*

The evidence in the record shows that "neither Plaintiffs nor their counsel have any interest that are antagonistic to those of the absent class members." *In re Checking Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012) "The central issues in this case"—the existence, unlawfulness, and effect of FIU's decision to retain the fees collected for services it did not provide—"are common to the claims of Plaintiffs and the other members of the Class." *Id.* The "representative Plaintiff[s], like each absent class member, ha[ve] a strong interest in proving [FIU's] scheme,

establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress." *Id.* Plaintiffs "thus share the true interests of the class.'" *Id.* (citing *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D. 450, 459 (S.D. Fla. 1988)).

Plaintiffs have shown that they are willing, able, and prepared to serve the Court and the Class in a representative capacity and will undertake all associated obligations and duties. *See* Alexandre Decl. ¶ 19-23; Fagundez Decl. ¶¶ 17-21. For example, Plaintiff Alexandre lobbied FIU to waive the fees she was charged prior to filing the lawsuit. Alexandre Decl. ¶¶ 12, 20. Plaintiffs have also dedicated a significant amount of time to this litigation and attested to their ability to respond to discovery requests, appear at depositions, and make themselves available to testify at trial. Alexandre Decl. ¶ 21; Fagundez Decl. ¶ 19. Further, they understand their fiduciary duties as class representatives and have no conflicts of interest with the students whom they seek to represent. Alexandre Decl. ¶ 22; Fagundez Decl. ¶ 20. Given this evidence, the Court finds that Plaintiffs are adequate representatives of the Class.

Additionally, the law firms seeking to represent the Class include qualified and experienced lawyers who are vigorously litigating against other Florida schools on behalf of students. Plaintiffs' Counsels resumes demonstrate their experience and expertise in class actions. The Court therefore concludes that Plaintiffs and the firms seeking appointment as Class Counsel will properly and adequately prosecute this case. The Court appoints Plaintiffs as Class representatives and the Moskowitz Law Firm and Berger Montague as Class Counsel.

**The Proposed Class Also Meets the Requirements of Rule 1.220(b)(3)**

In addition to meeting the requirements of Rule 1.220(a), a party seeking class certification must also satisfy one of three subdivisions of rule 1.220(b). Rule 1.220(b)(3) contains both a "predominance" and "superiority requirement." Rule 1.220(b)(3). Rule 1.220(b)(3) provides in pertinent part that (b)(3) class certification is appropriate when:

the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

In determining whether to certify a (b)(3) class "the trial court must determine whether Plaintiff can prove [its] own individual case and, by doing so, necessarily prove[s] the cases for each of the [class members] ... [and] [i]f [it] cannot, a class should not be certified." *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846 (Fla. 3d DCA 2012)at 855. (Citations omitted). Rule 1.220(b)(3) "requires that common questions of law or fact predominate over any individual questions of separate class members." *Id.* It also requires that "class representation is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* If significant individual issues exist requiring proof from each member of the class, then class representation is not appropriate as the lawsuit becomes unmanageable. *Id.*

In order to establish predominance, Plaintiff must "'demonstrate the existence of a reasonable methodology for generalized proof of class-wide impact and damages.'" *InPhyNet Contracting Services, Inc. v. Soria*, 33 So. 3d 766, 771–72 (Fla. 4th DCA 2010). (Citations omitted). The predominance requirement parallels the commonality requirement under rule 1.220(a), however, it is more stringent as it requires that common questions pervade. *Id.* If the putative class representative satisfies the "reasonable methodology" requirement, he or she has shown that proving the case "necessarily proves the cases of the other class members."

The Court finds that common issues predominate over individual issues in this case because Plaintiffs' claims are based on FIU's failure to provide students with services they paid for with their fees. *See Wright*, ECF No. 31, at 6 (finding common issues predominate as to students' claims for breach of contract and unjust enrichment). The case poses the same basic legal question for all class members: whether (a) FIU breached its express contracts with students by failing to provide

them with the services itemized on their Statements of Charges, and (b) FIU was unjustly enriched by retaining the amounts for the fees that, in all fairness, should have been returned to students. The answer to th[ese] question[s] will essentially resolve the core dispute between [FIU] and the class members. See *Standard Petroleum Co. v. Faugno Acquisition, LLC*, 191 A.3d 147 (Conn. 2018) (affirming certification of customers of gasoline wholesaler for, among other things, breach of contract and unjust enrichment, arising from allegations that suppliers overcharged them for state and federal taxes on the products).

Plaintiffs and Class members' claims all relate to FIU's common course of conduct, and FIU's liability to the class will involve the same evidence: (i) the Statements of Charges, which specify the exact fees charged to students, and the amounts charged and paid by students; (ii) the total amounts of fees collected from students during the semesters in 2020; and (iii) if and how those fees were spent during the semesters. By calculating the value of the fees that were *not* spent on services for which students paid, the Court will be able to determine the precise amounts that should be refunded, on a pro-rata basis, to both Plaintiffs and the Class.

"Additionally, even though the damages owed to class members may vary" based on the particular fee charged, "damages can be easily calculated utilizing class-wide data available from [FIU]. The fact that individualized damages issues will need to be resolved is not disqualifying of class certification." *Herman*, 320 F.R.D. at 296 (citing *Allapattah Servs., Inc.,* 333 F.3d at 1261 ("the presence of individualized damages issues does not prevent a finding that the common issues in the class predominate.") (internal citations omitted)). Here, as in *Morgan*, 33 So. 3d at 66,

> although there will be some factual variations among the claims of each class member, those variations go to the determination of each class member's damages rather than to the elements of the claims. The actual claims are based on the same legal theories and are based on the same course of conduct by [FIU]. Thus, if [Plaintiffs are] able to prove the elements of [their] claims, [they] would necessarily be able to prove the elements of the claims of each of the other class members.

Consequently, [Plaintiffs] adequately prove[] that common issues predominate over individual questions.

Finally, FIU's common defenses in this case strongly support certifying the proposed Class because they apply equally to all members. *See Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2016 WL 7365187, at *4 (M.D. Fla. Mar. 30, 2016) (concluding that "the common defense would apply to Plaintiff and other members of the putative class"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) (concluding defense was "not an individualized issue defeating predominance, but [was] itself a question/defense common to the class as a whole").

Florida Rule of Civil Procedure 1.220(b)(3) also requires that "class representation is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority analysis looks at whether the "class action would achieve economies of time, effort and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." *Discount Sleep of Ocala v. City of Ocala*, 245 So. 3d 842, 856 (Fla. 5th DCA 2018) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 615). Predominance of common issues also has a large impact on the superiority of a class action lawsuit. *See In re Florida Microsoft Antitrust Litigation*, No. 99-27340, 2002 WL 31423620, at *18 (Fla. 11th Cir. Ct. Aug. 26, 2002). Here, because common issues so strongly predominate, the Court may begin its superiority analysis with a strong presumption in favor of certification. *See Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 317 (S.D. Fla. 2017) ("[D]ue to the strong presumption that stems from this finding of predominance, we also conclude that a class action would be the superior method …"). Where, like here, the absent class members' "individual claims are too small to expect them to be adjudicated separately," the added efficiency of a class action is at its greatest. *Miami-Dade Expressway Auth. v. Tropical Trailer Leasing, L.L.C.*, 250 So. 3d 751, 757 (Fla. 3d DCA 2018). ,Absent a class action, most Class Members would find the cost of litigating their claims to be

prohibitive. Moreover, hundreds of thousands of individual actions would be judicially inefficient. Rather, the proposed class action would be more manageable if it was subject to class action status rather than individual suits. Absent a class-wide resolution, it is unlikely that any significant number of class members would obtain redress. For these reasons, a class action is the superior method of adjudicating this controversy. Thus, the Court finds that class action would be clearly superior to all other methods to the fair and efficient adjudication of this controversy.

Based upon all the above findings, it is

**ORDERED AND ADJUDGED** that the Plaintiff has demonstrated by competent, substantial evidence that this action meets all the requirements for class certification under Rule 1.220. Plaintiff has proved (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation as well as showing, in accordance with Rule 1.220(b)(3), that proof of Plaintiff's cause will necessarily be dispositive of the claims asserted in the First Amended Complaint and that Plaintiff has acted and continues to act on grounds generally applicable to all the members of the putative class, thereby making final relief concerning the putative class as a whole appropriate. Plaintiff, is appointed as Class representative and Plaintiffs' attorneys are appointed as Class Counsel.

## MOTION TO DISMISS

### Legal Standard

A motion to dismiss tests only the legal sufficiency of a complaint and is not intended to determine issues of ultimate fact. "[T]he trial court is necessarily confined to the well-pled facts alleged in the four corners of the complaint." *Lewis v. Barnett Bank of S. Florida, N.A.* 604 So. 2d 937 (Fla. 3d DCA 1992). The primary purpose of a motion to dismiss is to request the trial court to determine whether the complaint properly states a cause of action upon which relief can be granted and, if it does not, to enter an order of dismissal. *Provence v. Palm Beach Taverns, Inc.*,

676 So. 2d 1022 (Fla. 4th DCA 1996). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* Thus, the question for this court to decide is whether, assuming the well-pleaded factual allegations in the Complaint are true, Plaintiffs would be entitled to the relief requested.

**The Court Has Subject Matter Jurisdiction Over This Matter.**

FIU argues that the Court does not have subject matter jurisdiction because Plaintiffs did not request refunds pursuant to the guidelines provided in FIU-1114, and therefore failed to exhaust their administrative remedies. FIU-1114 provides that a student may seek a refund of fees "on account of other exceptional circumstances beyond the control of the student which preclude a student from completing the grading period." FIU-1114(2). Because Plaintiffs do not allege that the COVID-19 pandemic or the closure of FIU's campuses precluded them from completing any grading period, the Court finds that this regulation is inapplicable to Plaintiffs' claims and therefore not an administrative remedy that Plaintiffs were obligated to exhaust. *See Southern Bell Tel. & Tel. Co. v. Mobile America Corp.,* 291 So. 2d 199, 201 (Fla. 1974) (holding plaintiffs are "not required to pursue administrative remedies where such remedies would be of no avail."); *see also Eastern Air Lines, Inc. v. Hillsborough County Aviation Authority,* 454 So. 2d 1076, 1079 (Fla. 2d DCA 1984) ("[T]he doctrine of exhaustion of administrative remedies, to reiterate, is a general rule, not an absolute one."). As such, the Court finds that it has subject matter jurisdiction over this matter.

**Sovereign Immunity Does Not Bar Plaintiffs' Breach of Contract Claim**

Plaintiffs allege that FIU breached an express, written agreement with them concerning fees that they paid when they registered for courses at FIU. *See* FAC ¶¶ 9, 139-149. They attach to their complaint invoices they received from the university, called "Statement of Charges," which itemize the fees that Plaintiffs were charged and the specific services to be provided for each fee.

*See id.*, Ex's E and F, *see also* ¶ 61. Plaintiffs allege that these documents constitute the express, written contract between them and FIU to provide specific services authorized by Florida statutes in exchange for the payment of fees. *See id.*, ¶¶ 59-66.

The doctrine of sovereign immunity "provides that a sovereign cannot be sued without its own permission." *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005). Where, however, "the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). Florida law is clear that "where a suit is brought on an express, written contract entered into by a state agency under statutory authority, the defense of sovereign immunity does not protect the state agency from an action arising out of a breach of either an express or implied condition or covenant of that contract." *Champagne-Webber, Inc. v. City of Ft. Lauderdale*, 519 So. 2d 696, 698 (Fla. 4th DCA 1988), *aff'd, Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049 (Fla. 1997).

The Court finds that Plaintiffs have adequately plead the existence of an express contract between themselves and FIU in which Plaintiffs agreed to pay fees in exchange for specific services to be provided by FIU during the Spring, Summer, and Fall semesters in 2020, in accordance with section 1009.24, Florida Statutes, and its corresponding regulations.

"A contract is made under Florida law when three elements are present: offer, acceptance, and consideration." *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012). Plaintiffs allege that their Statements of Charges from FIU contains written information establishing that FIU offered to provide specific categories of services and that Plaintiffs accepted that offer by providing consideration in the form of monetary payment. *See* FAC ¶¶ 59-62, 64-66; *see also* Ex's E and F.

Plaintiffs adequately support their allegations by attaching to their complaint documents which identify the specific fees charged to Plaintiffs, their purpose and their price, and the amounts that Plaintiffs agreed to pay, and did pay, for the fees for each semester. *See id.*, Ex's E and F. Additionally, after FIU was required by this Court to produce responsive discovery in this case, and after the Third District Court of Appeal denied FIU's writ of prohibition concerning that discovery, Plaintiffs were provided, and provided the Court with, additional documents evidencing FIU's written agreements with students concerning the payment of fees in exchange for services. The Court takes judicial notice of these records at this stage because they are public documents, verified by FIU, and incorporated into the Amended Complaint by reference. *See Lam v. Univision Commc'ns, Inc.*, 46 Fla. L. Weekly D2235, 2021 WL 4762499, at *6 n.9 (Fla. 3d DCA Oct. 13, 2021) (explaining that, when ruling on a motion to dismiss, "the court may also consider 'documents incorporated into the complaint by reference and matters of which a court may take judicial notice'"); Amend. Compl. ¶ 63 (alleging that class members' express contracts consist of other documents that "Plaintiffs should be given the opportunity to obtain through discovery directed to FIU, which would have these express contracts in its sole and exclusive possession"). These documents show that FIU entered into agreements with Plaintiffs, and each student, that they would be required to provide FIU with the payment of specific costs, in exchange for the providing of specific fees and services, all that are the subject of this litigation. *See* FIU 0269-0271, 0333, 0336, 0340 (student "acknowledges and accepts the terms and conditions", "I am financially liable for tuition and fees"), FIU 0683 ("Enrollment Agreement"), FIU 0142 ("Student Consent Agreement"). The Court finds that these documents further support its conclusion that, at this stage, Plaintiffs sufficiently allege the existence of express contracts between FIU and Plaintiffs that waive sovereign immunity.

The foregoing documents are sufficiently definite to constitute an express contract because they incorporate section 1009.24, the law applicable to Plaintiffs' Statements of Charges. *See Shavers v. Duval County*, 73 So. 2d 684 (Fla. 1954) ("It has long been firmly established that the

laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."); *Citizens Ins. Co. v. Barnes*, 124 So. 722, 723 (Fla. 1927) ("[W]hen parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes part of the contract."); *see also Fisher v. Polk State College Dist. Bd. of Trs.*, Case No. 2021-CA-000922 (Fla. 10th Cir. Ct. Oct. 26, 2021) (finding that Plaintiff's express contract with the school "may incorporate statutory conditions" in case with similar allegations); *Rojas v. The Univ. of Fla. Bd. of Trs.*, Case No. 01-2021-CA-1124 (Fla. 8th Cir. Ct. Oct. 18, 2021) (finding the plaintiff's documents "sufficiently definite to constitute an express contract because they incorporate section 1009.24, the law applicable to Plaintiff's invoices"). Further,

> [i]t seems neither logical nor within the principles of fairness enunciated in the *Pan–Am Tobacco* case to construe the restrictive language of that case to mean that the defense of sovereign immunity is waived only for the state's breach of an express covenant or condition of an express, written contract, but that the defense is not waived for the state's breach of an implied covenant or condition of such contract, while the other contracting party remains liable for a breach of both the express and the implied covenants and conditions.

*Champagne-Webber*, 519 So. 2d at 698. Applying this principle, the Court finds that FIU's obligation to provide the services specified in section 1009.24, Florida Statutes, is an implied covenant or condition of its express contract with Plaintiffs. *See id.*

Moreover, even fees that FIU charges pursuant to section 1009.24 but which are not further elaborated in that statute must still be spent for their statutorily authorized purpose because "if a fee is described in a contract as for a specific purpose . . ., then not using the fee for that purpose . . . could constitute a breach." *Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320, 1325

(S.D. Fla. 2017). Plaintiffs sufficiently allege that FIU committed a breach of contract when it collected fees from students but did not utilize all those fees on the services they are intended to provide. *Id.*

Accordingly, the Court finds that Plaintiffs have sufficiently alleged the existence of an express contract that includes the definite terms in Plaintiffs' Statement of Charges and the incorporated statute.

Based on the foregoing, the Court finds that Plaintiffs' breach of contract claims are not barred by sovereign immunity because by entering express, written agreements to provide specified services in exchange for the payment of fees, FIU waived sovereign immunity as to claims for breach of those contracts—as circuits courts across Florida have unanimously concluded in similar cases. *See Rojas v. The Univ. of Fla. Bd. of Trs.*, Case No. 01-2021-CA-1124 (Fla. 8th Cir. Ct. Oct. 18, 2021) (denying university's motion to dismiss and motion for judgment on the pleadings as to the breach of contract claim because the complaint sufficiently alleges the existence of an express written agreement between the plaintiff and the school that waives sovereign immunity); *Fisher v. Polk State College Dist. Bd. of Trs.*, Case No. 2021-CA-000922 (Fla. 10th Cir. Ct. Oct. 26, 2021) (same); *Moore v. The Univ. of S. Fla. Bd. of Trs.*, Case No. 21-CA-002445 (Fla. 13th Cir. Ct. July 29, 2021) (denying university's motion to dismiss plaintiff's breach of contract claim due to contractual waiver of sovereign immunity); *Verdini,* 2021 WL 640338, at *1–*2 (finding the defendant college's sovereign immunity defense did not bar the plaintiff's breach of contract claim because plaintiff had sufficiently alleged an express written contract with the school "to survive a motion to dismiss").

**Section 768.38, Florida Statutes Does Not Apply To Plaintiffs' Claims.**

FIU argues that Section 768.38 requires dismissal of the case. This is not the first time that FIU has raised Section 768.38's applicability to Plaintiffs' claims. On July 1, 2021, FIU moved

for a protective order from discovery based on the procedural components of that statute. The Court analyzed the statute's applicability to Plaintiffs' claims when it ruled on that motion and found that Section 768.38 does not apply to Plaintiffs' claims because the statute is limited to personal injury claims sounding in tort and not Plaintiffs' economic claims for breach of contract and unjust enrichment. *See* Order Denying Motion for Protective Order. The Third DCA affirmed this order and denied FIU's petition for writ of certiorari on December 6, 2021.

FIU asks the Court to dismiss this action because it is barred by Section 768.38. However, the Court finds that Section 768.38 does not apply to Plaintiffs' claims for breach of contract and unjust enrichment.

**The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims.**

FIU argues that the voluntary payment doctrine is an additional basis upon which to dismiss this action. FIU has improperly raised this argument in its motion, as the doctrine is an affirmative defense that "may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion." *See Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016); *see also Pacific Mut. Life Ins. Co. of Cal. v. McCaskill*, 170 So. 579, 583 (1936); *United States v. Cayman Vill. Condo. Ass'n, Inc.*, 12-61797-CIV, 2013 WL 1665846, at *1 (S.D. Fla. Apr. 17, 2013).

**The Separation of Powers Doctrine Does Not Bar Plaintiffs' Claims.**

FIU also raises the separation of powers doctrine as an additional reason for dismissal. Concerns about separation of powers are inapplicable where, as here, FIU waived claims for breach of contract by expressly agreeing to provide specific services to students in exchange for fees. Indeed, because Florida contracts incorporate applicable Florida law, the judiciary commonly determines whether violations of such law constitute a breach of contract. *See, e.g.*, *Fla. Dep't of Envt'l Protection v. ContractPoint Fla. Parks, LLC*, 986 So. 2d 1260, 1270 (Fla. 2008) (holding

that *Pan-Am Tobacco Corp.*, 471 So. 2d 4, requires judgments against the State to be paid in a contract action).

Moreover, judicial determination of whether FIU is fulfilling the promise that it made to its students to provide certain services in exchange for receiving payment of the fees simply expresses the principles underlying Florida's sovereign immunity jurisprudence. In *Pan-Am Tobacco Corp.*, 471 So. 2d at 5, the Court's decision was guided by "basic hornbook law that a contract which is not mutually enforceable is an illusory contract," explaining that "[w]here one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound." *Id.* (citing *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 (S.D. Fla. 1923), *aff'd*, 296 F. 693 (5th Cir. 1924)); *see also ContractPoint*, 986 So. 2d at 1270 ("a contract that grants one party the right to sue, but also affords the other party the right to declare that it has no legal obligation to pay, is void for lack of mutuality of remedy"). By adjudicating this breach of contract claim, the Court helps ensure the mutuality of FIU's express contracts with students.

Based on the foregoing findings, it is **ORDERED AND ADJUDGED** that FIU's Motion to Dismiss is **DENIED** as to the Breach of Contract claim. However, as to the Plaintiffs' unjust enrichment claim, the motion to dismiss is **GRANTED** with prejudice as Florida law does not permit a waiver of sovereign immunity based on implied contracts. Defendant shall have ten (10) days from the date of this order to file an answer.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/30/21.

_____
WILLIAM THOMAS

CASE NO. 2021-009869-CA-01 (44)

CIRCUIT COURT JUDGE

<div style="border: 2px solid red; padding: 8px; text-align: center; color: red;">

**No Further Judicial Action Required on THIS MOTION**
**CLERK TO RECLOSE CASE IF POST JUDGMENT**

</div>

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.