**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KRYSTIAN WNOROWSKI, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF NEW HAVEN,<br><br>    Defendant. | No. 3:20-cv-01589 (MPS)<br><br><br><br><br><br><br><br>April 1, 2022 |

**DEFENDANT UNIVERSITY OF NEW HAVEN'S
OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**DEFENDANT UNIVERSITY
OF NEW HAVEN**

   /s/ Linda L. Yoder
Linda L. Yoder (ct01599)
Michael A. King (ct29389)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.:   (860) 251-5000
Fax:   (860) 251-5219
lyoder@goodwin.com
mking@goodwin.com

-and-

Abigail W. Williams (*admitted pro hac vic*e)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT 06901-3522
Tel.: 203-324-8144
Fax: 203-324-8199
awilliams@goodwin.com

*Its Attorneys*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

I.    UNH TRANSITIONS TO REMOTE INSTRUCTION AND SERVICES
      BECAUSE OF THE PANDEMIC ............................................................................... 2

II.   UNH COURSES, TUITION, AND FEES ..................................................................... 4

III.  THE PANDEMIC'S IMPACT ON UNH'S FINANCES ............................................. 7

IV.   PLAINTIFF'S EXPERIENCE AT UNH ...................................................................... 8

V.    PLAINTIFF'S CLAIMS AT ISSUE IN THIS LITIGATION .................................... 9

ARGUMENT .......................................................................................................................... 10

I.    LEGAL STANDARD .................................................................................................... 10

II.   PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE ...................... 12

      A.  Members of Plaintiff's Proposed Classes Cannot Be Ascertained ............................ 13

      B.  Plaintiff's Proposed Tuition Class Is Overbroad ...................................................... 15

III.  PLAINTIFF CANNOT SATISFY RULE 23(a)'s TYPICALITY REQUIREMENT ....... 16

IV.   PLAINTIFF CANNOT SATISFY RULE 23(b) ............................................................ 18

      A.  Plaintiff's Breach of Contract Claims Turn On Highly Individualized Evidence ...... 18

            1.  Plaintiff Cannot Demonstrate The Existence Of A Contract On A
                Class-Wide Basis ............................................................................................. 19

            2.  Materiality Cannot Be Shown By Class-Wide Proof ........................................ 24

            3.  Causation Cannot Be Demonstrated On a Class-Wide Basis ............................. 28

            4.  Individualized Damages Inquiries Predominate .............................................. 29

      B.  Plaintiff Cannot Demonstrate Predominance On His Unjust Enrichment Claims ..... 33

      C.  The Proposed Class Action Is Not Superior to Other Methods of Adjudication ........ 33

V.    PLAINTIFF CANNOT SATISFY RULE 23(b)(2) ....................................................... 34

VI.   PLAINTIFF CANNOT SATISFY RULE 23(c)(4) ....................................................... 35

CONCLUSION ...................................................................................................................... 37

**TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page**

*Alexander v. Florida International University Board of Trustees*,
    No. 2021-009869-CA-01(44) (Fla. 11th Cir. Ct. Dec. 30, 2021) ............................. 20

*Arredondo v. Univ. of La Verne*,
    No. 2:20-cv-07665 (C.D. Cal. Feb. 2, 2022) .................................................. 20

*Atl. St. Assocs. v. Atl.-Rockland Stamford Assocs.*,
    43 Conn. App. 113 (1996) .................................................................. 25

*Audet v. Fraser*,
    332 F.R.D. 53 (D. Conn. 2019) ........................................................ 11, 24

*Berni v. Barilla S.p.A.*
    964 F.3d 141 (2d Cir. 2020). ............................................................. 35

*Bernstein v. Nemeyer*,
    213 Conn. 665, 570 A.2d 164 (1990) ...................................................... 24

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015) ........................................................... 11, 12

*Bridge v. Phx. Bond & Indem. Co.*,
    553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) ..................................... 36

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) .............................................................. 16

*Carlyle Johnson Machine Co., LLC v. April*
    No. CV 970481243S, 2000 WL 234311, at * 3 (Conn. Super. Ct. Feb. 10, 2000) ...... 25, 26, 27

*Carrano v. Yale-New Haven Hosp.*,
    279 Conn. 622 (2006) .................................................................... 31

*Collinge v. Intelliquick Delivery, Inc.*
    No. 2:12-cv-00824 JWS, 2015 WL 1292444, at *14 (D. Ariz. Mar. 23, 2015) .................... 33

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................................................... 10, 19, 30

*Cross v. Univ. of Toledo*,
    No. 2020-00274, 2021 WL 1822676 (Ohio Ct. Cl. Apr. 26, 2021 ............................... 20

*Denny v. Deutsch Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ........................................................... 20, 21

*Espejo v. Cornell Univ.*,
    523 F. Supp. 3d 228 (N.D.N.Y. 2021) ...................................................... 21

iii

*Evans v. Brigham Young University,*
No. 1:20-cv-100-TS, 2022 WL 596862, at *3-4 (D. Utah Feb. 28, 2022) ........................ 14, 16

*FCM Grp., Inc. v. Miller,*
300 Conn. 774 (2011) ................................................................................................ 31

*Fiore v. Univ. of Tampa*
No. 20-CV-3744 (CS), 2021 WL 4925562, at *11 (S.D.N.Y. Oct. 20, 2021) ...................... 21

*Fishman v. SmartServ Online, Inc.,*
No. X05CV0172810S, 2003 WL 536629 (Conn. Super. Ct. Feb. 11, 2003) .......................... 24

*Flater v. Grace,*
291 Conn. 410 n.11 (2009) ........................................................................................ 30

*Flynn v. DirectTV, LLC*
No. 3:15-cv-1053 (JAM), 2016 WL 4467885, at *7 (D. Conn. Aug. 23, 2016) ..................... 12

*Gociman v. Loyola Univ. of Chicago,*
515 F.Supp.3d 861 ................................................................................................... 21

*Ibe v. Jones,*
836 F.3d 516 (5th Cir. 2016) .................................................................................... 26

*In re Aluminum Warehousing Antitrust Litig.,*
336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................... 19

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
689 F.3d 229 (2d Cir. 2012) ...................................................................................... 34

*In re LIBOR-Based Fin. Instruments Antitrust Lit.,*
299 F.Supp.3d 430 (S.D.N.Y. 2018).......................................................................... 36

*In re Nassau Cty. Strip Search Cases,*
461 F.3d 219 (2d Cir. 2006)....................................................................................... 35

*In re Petrobras Sec.,*
862 F.3d 250 (2d Cir. 2017)................................................................................. 12, 19

*Johnson v. Nextel Commc'ns Inc.,*
780 F.3d 128 (2d Cir. 2015)...................................................................................... 18

*Kurtz v. Costco Wholesale Corp.,*
818 F. App'x 57 (2d Cir. 2020).................................................................................. 10

*Langan v. Johnson & Johnson Consumer Cos., Inc.,*
897 F.3d 88 (2d Cir. 2018)........................................................................................ 19

*Little v. Grand Canyon Univ.,*
No. CV-20-00795, 2002 WL 266726 (D. Ariz. Jan. 28, 2022) ........................................ 20, 22

*Little v. Grand Canyon University I*
No. CV-20-00795-PHX-SMB, 2021 WL 4253715 (D. Ariz. Sept.1, 2021) ........................... 21

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.,*
993 F.2d 11 (2d Cir. 1993)........................................................................................ 36

*Mahon v. Chicago Title Ins. Co.,*
   296 F.R.D. 63 (D. Conn. 2013)................................................................................. 17

*Marino v. Home Depot U.S.A., Inc.,*
   245 F.R.D. 729 (S.D. Fla. 2007)............................................................................. 26

*Mazzanti v. Gen. Elec. Co.*
   No. 3:13CV1799 (WWE), 2017 WL 923905, at *5 (D. Conn. Mar. 7, 2017) ...................... 30

*Mazzei v. Money Store,*
   829 F.3d 260 (2d Cir. 2016)................................................................................. 16

*McLaughlin v. Am. Tobacco Co.,*
   522 F.3d 215 (2d Cir. 2008)............................................................................ 36, 37

*Metzner v. Quinnipiac Univ.,*
   528 F. Supp. 3d 15 (D. Conn. 2021).......................................................................... 21

*Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.,*
   87 A.3d 534 (Conn. 2014) ................................................................................ 20

*Monaco v. Sullivan, 7*
   37 F. App'x 6 (2d Cir. 2018)................................................................................. 16

*Nationwide Life Ins. Co. v. Haddock,*
   460 F. App'x 26 (2d Cir. 2012) ............................................................................ 34

*O'Donnell v. AXA Equitable Life Ins. Co.,*
   210 Conn. App. 662 (2022) ............................................................................... 28

*Roach v. T.L. Cannon Crop.,*
   778 F.3d 401, 408-409 (2d Cir. 2015).. ...................................................................29

*Roberts v. C.R. England, Inc.,*
   318 F.R.D. 457 (D. Utah 2017) ........................................................................... 25

*Robinson v. Metro-N. Commuter R.R.,*
   267 F.3d 147 (2d Cir.2001)................................................................................ 36

*Rosado v. Barry Univ., Inc.*
   No. 1:20-cv-21813, Order (S.D. Fla. Sept. 9, 2021)....................................................... 20

*Shah v. Cover-It, Inc.,*
   86 Conn. App. 71 (2004) .................................................................................. 24

*Simms v. Jones,*
   296 F.R.D. 485 (N.D. Tex. 2013) ......................................................................... 26

*Smith v. The Ohio State Univ.,*
   No. 2020-00321, Order (Ohio Ct. Cl. Jan. 21, 2022) ..................................................... 20

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)................................................................................ 34

*Vega v. T-Mobile USA, Inc.,*
   564 F.3d 1256 (11th Cir. 2009) ....................................................................... 25, 33

*Waitt v Kent State Univ.,*
   No. 2020-00392, Order (Ohio Ct. Cl. Feb. 11, 2022) ..................................................... 20

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ....................................................................................... 10, 33, 35

*Weiman v. Miami Univ.,*
   No. 2020-00614, Order (Ohio Ct. Cl. Dec. 13, 2021) .......................................... 20

*World Props., Inc. v. Arlon, Inc.,*
   663 F.Supp.2d 98 (D. Conn. Oct. 9, 2009) ............................................................. 25

*Wright v. Southern N.H. Univ.*
   No. 20-cv-609 (D. N.H. Sept. 22, 2021) ................................................................ 20

**Other Authorities**

Fed. R. Civ. P. 23(a) .............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 2, 16

Fed. R. Civ. P. 23(b) ..................................................................................................... 18

Fed. R. Civ. P. 23(b)(3) .......................................................................................... *passim*

Fed. R. Civ. P. 23(b)(2) .................................................................................... 11, 34, 35

Fed. R. Civ. P. 23(c)(4) ................................................................................. 11, 35, 36, 37

Pursuant to Federal Rule of Civil Procedure 23, Defendant University of New Haven ("UNH") respectfully submits this Opposition to Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel (ECF 52) ("MCC") and the memorandum of law in support of the same (ECF 52-1) ("MCC Memo").

## INTRODUCTION

Since the onset of the COVID-19 pandemic, UNH has put its students first, as it always does.  In March 2020, when the pandemic forced UNH to transition to remote instruction and services in order to protect the health and safety of its students and employees, the staff and faculty at UNH worked quickly and tirelessly to make sure that students could continue their educations.  UNH marshalled its resources, investing in technology and working with faculty, so that all classes could be taught through remote instruction.  UNH also shifted its students' services and activities to remote delivery.  As a result of these efforts, the students at UNH, including Plaintiff, were able to receive their educations and services, complete their courses for spring 2020, timely earn their credits to move toward graduation, and make progress toward their goals.

Nonetheless, Plaintiff seeks a refund of tuition and fees for the spring 2020 semester. Plaintiff alleges that students entered into an enforceable contract with UNH by paying tuition and fees, and that UNH allegedly breached that "contractual arrangement" by transitioning to remote instruction and failing to provide in-person services.  Plaintiff now asks the Court to certify two classes—a tuition class that includes "all persons whom paid tuition" and a separate fee class that includes "all persons whom paid fees."

Plaintiff's proposed classes do not satisfy the standards for class certification.  First, neither class is ascertainable because it is not possible to identify "all persons" who paid tuition

10986507

or fees without conducting numerous and burdensome inquiries because students' tuition and fees are paid from a variety of sources, including government, private and UNH grants, scholarships, loans, parents and others. The proposed tuition class is also impermissibly overbroad because it includes students who were already taking online classes during the spring 2020 semester.

Second, Plaintiff cannot show typicality required by Rule 23(a)(3). Plaintiff's claims are not typical of the thousands of other graduate and undergraduate students enrolled during the spring 2020 semester, including those who were already taking online courses.

Third, Plaintiff's proposed classes cannot be certified under Federal Rule of Civil Procedure 23(b)(3) because common issues of law and fact do not predominate. Litigating Plaintiff's breach of contract claims on a class-wide basis will raise a myriad of individualized issues. Plaintiff cannot show a contract through class-wide proof; materiality and causation raise inherently individualized issues about each student's experience; and any damages in this case will require individualized analyses, including an evaluation of individual student's scholarships and financial aid and actual damages.

In short, Plaintiff cannot meet the stringent requirements for Rule 23(a) or Rule 23(b)(3). Accordingly, Plaintiff's motion for class certification should be denied.

## **FACTUAL BACKGROUND**

## I.    **UNH TRANSITIONS TO REMOTE INSTRUCTION AND SERVICES BECAUSE OF THE PANDEMIC**

On March 10, 2020, Connecticut Governor Ned Lamont issued a Declaration of Public Health and Civil Preparedness Emergencies in response to the spread of Covid-19. (Dkt. No. 18-3, Ex. B to Defendant UNH's Memo. of Law in Support of Mot. to Dismiss ("Mot. to Dismiss Memo").) The day before on March 9, 2020, UNH announced that it was transitioning to remote

2

instruction in order to protect the safety and health of the UNH community.  (Am. Comp. ¶ 37.)
Several days later, on March 15, 2020, Governor Lamont issued an Executive Order cancelling
all public school classes and encouraging private institutions, like UNH, to do the same.  (Dkt.
No. 18-5, Ex. D to Mot. to Dismiss Memo.)  Five days later, Governor Lamont issued the "Stay
Safe, Stay Home" restrictions on all workplaces for non-essential business.  (Dkt. No. 18-6, Ex.
E to Mot. to Dismiss Memo.)  On March 16, 2020, in response to state and federal guidelines,
and to safeguard the health and safety of it students, employees, and campus visitors, UNH
announced that it would extend remote instruction through the end of the spring 2020 semester.
(Dkt. No. 18-7, Ex. F to Mot. to Dismiss Memo.)  During the remaining weeks of the spring
2020 semester, staff and faculty at UNH worked tirelessly to continue to provide classes,
services, and activities to students.

Following UNH's March 16 announcement, the university marshalled its resources to
respond to the pandemic and transition to remote instruction and services for all students.  UNH
invested in technology and infrastructure to facilitate the transition to remote learning and
student life.  (Declaration of Marc Maniatis in Support of Defendant University of New Haven's
Opposition to Motion for Class Certification ("Maniatis Decl.") at ¶ 13.)  UNH provided
assistance and support to students who were taking classes that transitioned from in-person to
remote instruction.  (*Id.*)  UNH made significant efforts to help its students who had been taking
in-person classes adapt to the remote format, including allowing students the option to choose a
letter grade or pass/fail for the spring 2020 semester.  (*Id.* at ¶ 14.)

UNH also transitioned the services that it provides students to remote delivery and added
new services.  (*Id*. at ¶ 15.)  These services included, but were not limited to the following:
Counseling and Psychological Services, the Career Development Center, the Accessibility

Resources Center, the Office of Graduate and International Student Life, the Center for Learning

Resources, the Myatt Center for Diversity and Inclusion; Office of Admissions, One Stop (which

includes the Bursar's Office, Financial Aid, and Registrar's Office).  (*Id.*)  In addition, UNH

students continued to have access to and receive recreation and fitness services following the

onset of the pandemic.  (*Id.* at ¶ 16.)  For example, UNH provided online fitness and wellness

programs classes on Zoom and Instagram.  (*Id.*)  UNH hosted virtual events, including a virtual

escape room during Charger Pride Week, tournaments allowing students to challenge each other

in a series of board-game style activities, and a gift card assistance program through the Campus

Pantry.  In addition, UNH provided admissions drive thru and one-on-one tours as well as access

to the SOAR virtual assistance room for students and families.  (*Id.*)

## II.    UNH COURSES, TUITION, AND FEES

The UNH student body is made up of undergraduate students and graduate students who

attend on a full-time, part-time, or evening basis.  (Maniatis Decl. at ¶ 5.)  Students enrolled at

UNH have the option to take courses in different instructional modes, including in-person and

online classes. (*Id.*)  For the 2020 spring semester, UNH offered 2,716 graduate and

undergraduate courses, with a total of 233 online courses offered.  (Maniatis Decl. at ¶ 6.)

During that time, 2,205 UNH students took at least one online course and there were 3,357 total

enrollments in online courses.[1]  (*Id.*)  During the 2020 spring semester, UNH did not charge

different tuition amounts for online and in-person courses.  (*Id.* at ¶ 7.)  Tuition and fees were

based on a student's enrollment status—*i.e.* undergraduate or graduate or full time or part-time—

and therefore remained the same whether a student signed up for all-in person courses, all online

---

[1] Enrollments refers to the number of students registered for each class.  (*Id.*)  If a student enrolls in two
online classes, it is counted as two enrollments, and if they register for three online classes, it is counted
as three online classes.  (*Id.*)

4

courses or a mix of in-person or online courses. (*Id.*) The 2019-2020 UNH Undergraduate Course Catalog ("UG Course Catalog") details the tuition and fees for undergraduate students. (Declaration of Michael A. King in Support of Defendant University of New Haven's Opposition to Motion for Class Certification ("King Decl."), at Exhibit A, UG Course Catalog, at UNH001570.) The tuition that each UNH undergraduate student paid for the spring 2020 semester varied depending on their enrollment status. (*Id.* at UNH001639-1642.) Full-time undergraduate students, such as Plaintiff, were charged $19,500 in tuition for the spring 2020 semester. (*Id.* at UNH001639.) Part-time undergraduate students, on the other hand, were charged $1,300 on a per credit basis, for up to 11 credits. (*Id.* at UNH001640.) Similarly, evening undergraduate students were charged $650 on a per credit basis, for up to 11 credit hours. (*Id.*) Because part-time and evening undergraduate students paid on a per credit basis, the amount of tuition that each paid differed by student.

The 2019-2020 UNH Graduate Course Catalog ("Graduate Course Catalog") details the tuition and fees for undergraduate students. (King Decl., at Exhibit B, Graduate Course Catalog, at UNH002041.) The tuition paid by graduate students for the spring 2020 semester was different from the tuition paid by undergraduate students, like Plaintiff. Graduate tuition also differed based on each graduate student's enrollment status and degree program. (*Id.* at UNH002185-2186.) MBA students paid $940 on a per credit hour basis, while students in cohort programs paid different amounts. (*Id.* at UNH002185.) EMBA students paid $1,145 per credit, students in the M.S. Taxation program paid $915, and students in the graduate Health Care Cohort paid $990. (*Id.*)

Similar to tuition, the fees UNH students pay vary by student enrollment status and in some case, based on courses or other factors. Full-time undergraduate students like Plaintiff paid

5

a General Student Fee of $720 for the 2020 spring semester, while part-time and evening

students paid a General Student Fee of $145.  (King Decl., Ex. A, at UNH001639-1640.)  The

General Student Fee is defined in the 2019-2020 Undergraduate Course Catalogue as:

> The general fee provides a partial contribution supporting essential infrastructure,
> facilities and institutional services necessary to promote student learning.  This
> fee covers access to health and counseling services and it supports student
> government and club activities.  In addition, this fee supports technology
> infrastructure initiatives including, but not limited to, networks, electronic
> information resources, computer laboratories and smart technology classrooms.
> This fee also covers facility enhancements and student services such as access to
> the Beckerman Recreation Center.  The general fee is charged for each semester
> in which a student enrolls.

(*Id.*, Ex. A, at UNH001639.)  Graduate students paid a Graduate Student Fee.  Full-time graduate

students paid $115, while part-time graduate students paid $95.  (*Id.*, Ex. B, at UNH002185.)

The 2019-2020 Graduate School Course Catalog does not contain a description of the fee. (*Id.*)

UNH also charged other fees depending on the courses that students were enrolled in for

the semester or based on other factors.  For example, Plaintiff paid an undergraduate Lab Fee of

$50 for the spring 2020 semester.  (*Id.*, Ex. D, UNH Bursar's Office Spring 2020 Semester

Charge and Payment Summary for Krystian Wnorowski.)  While Plaintiff alleges that it was a

mandatory fee, it was not, as evidenced by the fact that Plaintiff was not charged and did not pay

any Lab Fee during the fall 2020 semester.  (*Id.*, at Ex. E, UNH Bursar's Office Fall 2020

Semester Charge and Payment Summary for Krystian Wnorowski; Plaintiff's Amended

Complaint and Jury Demand ("Amended Complaint") at ¶ 28.)  Lab Fees are assessed based on

the courses that a student registers for.  The Lab Fee is also not a fixed fee, the range of the fee

for both undergraduate and graduate students during spring 2020 was $25 to $4000. (King Decl.,

Ex. A. at UNH001642, Ex. B, at UNH002186.)  UNH charged other fees based on other factors,

including housing and study abroad. (*Id.*, Ex. A, at UNH001641-1642, Ex. B at UNH002186.)
Plaintiff was not charged any of these other fees. (*Id.*, Ex. D.)

UNH receives tuition and fee payments from many different sources, including the
students themselves, employers, parents, grandparents, other family members and third parties.
(Maniatis Decl. at ¶ 8.) Tuition may also be paid through scholarship or grant funding. (*Id.*)
UNH's billing system does not reflect who paid tuition or fees on behalf of any individual
student. (*Id.* at ¶ 9.) With respect to payments made by check or online, the payor can only be
determined through a student-by-student review of underlying payment records, many of which
are not retained for more than one year. (*Id.*) In addition, prior to the COVID-19 pandemic,
students were allowed to make cash payments at One Stop. (*Id.* at ¶ 10.)

## III.    THE PANDEMIC'S IMPACT ON UNH'S FINANCES

The COVID-19 pandemic has had a significant negative impact on UNH's finances.
Providing students with remote instruction, services and activities imposed significant costs on
UNH. (Declaration of George Synodi in Support of Defendant University of New Haven's
Opposition to Motion for Class Certification ("Synodi Decl.") at ¶ 4.) This was compounded by
UNH's decision to refund housing and meal plan costs to students on a per diem basis for the
second half of the spring 2020 semester, with a cost of almost $9.8 million. (*Id.*) In addition to
meal plans and housing, UNH also refunded or credited certain other fees on a per-diem basis,
including parking fees, Nashville program fees and fees related to UNH's study abroad program
in Prato, Italy. (*Id.* at ¶ 5.)

In order to offset the significant COVID-19 related costs, including but not limited to
room and board refunds, UNH instituted material expense reductions including reducing the
salaries of all employees, eliminating the employer funded portion of the employee retirement

plan, employee furloughs, and reduced operating costs in a number expense categories.  (*Id.* at ¶ 6.)  Without these actions, the University would have ended the fiscal year ending June 30, 2020 with a significant operating deficit.  (*Id.*)  In sum, UNH's financial position did not benefit in any way as a result of the pandemic.

## IV.    PLAINTIFF'S EXPERIENCE AT UNH

Plaintiff was enrolled as a full-time undergraduate student at UNH during the spring 2020 semester, majoring in Finance with a minor in Psychology.  (King Decl., Ex. C, March 22, 2022 Tr. of Dep. of Krystian Wnorowski ("Wnorowski Tr.") at 21:21-22:6.)  Plaintiff was a commuting student and did not live on campus during his time at UNH.  (*Id.* at 25:25-26:2.)  For the spring 2020 semester, Plaintiff was enrolled in five courses that were taught in-person before the onset of the COVID-19 pandemic forced UNH to transition to remote instruction.  (*Id.* at 24:10-12, 27:7-28:6, 28:25-29:13.)  Although Plaintiff's courses transitioned to online instruction in March, 2020, he was able to continue attending in a virtual format.  (*Id.* at 30:13-18.)  Plaintiff completed the curriculum for his courses and earned the 15 credits he expected to earn for the spring 2020 semester.  (*Id.* at 36:11-39:18.)  Plaintiff testified that his classes in the spring 2020 semester were not of lesser value than they were before the classes transitioned to remote instruction.  (*Id.* at 64:5-65:12.)  For the spring 2020 semester, Plaintiff was charged $19,500 in tuition, $720 for the General Student Fee and $50 for a Lab Fee.  (*Id.* at Ex. 4.)  Plaintiff was not charged and did not pay any other fees for the spring 2020 semester.  (*Id.*)  During his deposition, Plaintiff testified that his father paid a portion of his spring 2020 tuition and fees. (King Decl., Ex. C, Wnorowski Tr. at 70:12-16, 77:5-6, 80:13-81:5.)  He also testified that he received scholarships and loans to pay for the tuition and fees.  (*Id.* at 16:23-17:15, 77:13-78:1; 79:5-16, 82:7-20.)

8

10986507

Prior to UNH's transition to remote instruction, Plaintiff testified that he used the recreation center and other facilities on campus.  (*Id.* at 47:24-52:14).  Following the closure of the recreation center building, unlike other UNH students, Plaintiff testified that he chose not to take part in any of the online fitness or wellness courses because they did not interest him.  (*Id.* at 104:25-106:13.)  Plaintiff also chose not to use many of the services offered remotely by UNH (or could not remember whether he did).  (*Id.* at 103:9-11, 108:9-11.)

Even though Plaintiff knew that at least some of his classes would be online or partially online (*i.e.* hybrid) due to COVID-19, he enrolled for the fall 2020 semester.  (*Id.* at 85:17-:10-90:13.)  In doing so, Plaintiff was charged, and paid, a higher tuition amount for fall 2020 as well as a higher General Student Fee than he had for the spring 2020 semester.  (King Decl., Ex. D and E.)  Plaintiff graduated from UNH in May of 2021, having received sufficient credits to do so since receiving his classes in an online format had no impact on his receipt of credit for completed courses.  (King Decl., Ex. C at 123:18-24.)  Since that time, he has secured full-time employment working for a property management company.  (*Id.* at 44:11-14.)

## V.    PLAINTIFF'S CLAIMS AT ISSUE IN THIS LITIGATION

In this action, Plaintiff seeks a partial refund of the tuition that he paid for the spring 2020 semester.  (Am. Compl. at ¶¶ 1-4.)  Plaintiff also seeks a partial refund for the fees that he paid for the spring 2020 semester.  (*Id.*)  While Plaintiff alleges that the fees include but are not limited to "a mandatory Lab Fee" and "a mandatory General Student Fee," discovery has shown that these are the only fees Plaintiff paid for the spring 2020 semester.  (King Decl., Ex. D; Am. Compl. at ¶ 28.)  Further, the "mandatory Lab Fee" was not a mandatory fee that UNH required every student to pay each semester.  Indeed, Plaintiff did not pay the Lab Fee every semester that

he attended UNH.  (*Id.* at Ex. E.)

On February 15, 2022, Plaintiff filed his Motion for Class Certification seeking to certify

two proposed classes defined as:

> **The Tuition Class:**
>
> All persons whom paid tuition for or on behalf of students enrolled in classes at the University of New Haven for the Spring 2020 Semester and were denied live in-person instruction from March 9, 2020 until the end of the Semester.
>
> **The Fees Class:**
> All persons whom paid fees for or on behalf of students enrolled at the University of New Haven who were charged fees for services, facilities, resources, events and/or activities for the Spring 2020 Semester that were not provided in whole or in part.

(MCC at 1.)[2]  Plaintiff seeks to appoint himself as the Class Representative and moves pursuant

to Rule 23(g) for the appointment of the Anastopoulo Law Firm, LLC as Class Counsel.  (*Id.*)

## **ARGUMENT**

### I.    **LEGAL STANDARD**

A class action is "an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

(citation and internal quotation marks omitted).  "To come within the exception, a party seeking

to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23."  *Id.*

(*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

"To proceed with a class action, a plaintiff must satisfy four prerequisites under Rule 23:

numerosity, commonality, typicality, and adequacy."  *Kurtz v. Costco Wholesale Corp.*, 818 F.

App'x 57, 60 (2d Cir. 2020).  Plaintiff bears as the "party seeking class certification . . . the

burden of demonstrating compliance with Rule 23's prerequisites by a preponderance of the

---

[2] The Memorandum of Law in Support of Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel is referred to as "MCC Memo.".

10986507

evidence." *Id.*  In addition, because Plaintiff seeks certification of a Rule 23(b)(3) class action, he must also demonstrate: "(1) that the questions of law or fact common to class members predominate over any questions affecting only individual members (the predominance requirement); and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (the superiority requirement)."  *Audet v. Fraser*, 332 F.R.D. 53, 63 (D. Conn. 2019) (internal quotation marks omitted).  In addition, the Second Circuit also recognizes an "implied requirement of ascertainability" in Fed. R. Civ. P. 23. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).  "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (citing 7A Charles Alan Wright & Arthur R. Miller et a., Fed. Practice & Procedure § 1760 (3d ed. 1998)).

Here, the evidence shows that Plaintiff cannot establish many of Rule 23's requirements for class certification.  First, Plaintiff's class definitions are not ascertainable because they include *all* individuals who paid tuition or fees.  Plaintiff's proposed tuition class definition is also overly broad.  Second, Plaintiff's claims are not typical of the proposed classes.  Third, Plaintiff's proposed classes are ill-suited for class certification because Plaintiffs' claims turn on highly individualized factual inquiries that cannot be taken on a class-wide basis.  Fourth, a class action is unmanageable because of the highly individualized questions.  Fifth, Plaintiff's bid for certification under Rule 23(b)(2) is without merit because the clear purpose of the complaint is to obtain monetary damages.  And finally, Plaintiff's bid for certification under Rule 23(c)(4) is also without merit because common issues do not predominate over individualized issues with

11

respect to liability.

## II.    PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE

Plaintiff has not met his burden to establish that the proposed classes are ascertainable. As the Second Circuit has explained "[t]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.  A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.  *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017) (citing *Brecher*, 806 F.3d at 24-25).  In addition the "Second Circuit has cautioned against certifying overbroad classes."  *Flynn v. DirectV, LLC*, No. 3:15-cv-1053 (JAM), 2016 WL 4467885, at *7 (D. Conn. Aug. 23, 2016) (citation omitted).

In this case, Plaintiff seeks to certify two different classes—one for tuition and one for fees.  Plaintiff defines the tuition class as "All persons whom paid tuition for or on behalf of students enrolled in classes at the University of New Haven for the Spring 2020 Semester and were denied live in-person instruction from March 9, 2020 until the end of the Semester." (MCC at 1.)  Plaintiff defines the separate fee class as "[a]ll persons whom paid fees for or on behalf of students enrolled at the University of New Haven who were charged fees for services, facilities, resources, events and/or activities for the Spring 2020 Semester that were not provided in whole or in part."  (*Id.*).  Neither the Proposed Tuition Class nor the Proposed Fee Class, however, represent an ascertainable class because it is not possible to determine "all persons who paid tuition" or "all persons who paid fees" without numerous and burdensome individualized inquires.  In addition, the Proposed Tuition Class is overly broad because it seeks to include students who chose to take online classes during the spring 2020 semester.

12

**A.      Members of Plaintiff's Proposed Classes Cannot Be Ascertained**

Plaintiff asserts that the Proposed Tuition Class includes "[a]ll persons whom paid tuition" and that the Proposed Fee Class includes "[a]ll persons whom paid fees."  (MCC at 1.) However, like other colleges and universities, UNH receives tuition and fee payments from many different sources, including the students themselves, employers, parents, grandparents, other family members and third parties.  (Maniatis Decl. at ¶ 8.)  Tuition may also be paid through scholarship or grant funding.  (*Id*.)  Because UNH does not track who paid tuition or fees on behalf of any individual student in each student's payment ledger, determining "all persons who paid tuition" and "all persons who paid fees" cannot be readily and easily ascertained from a review of UNH's records as Plaintiff suggests.  (MCC Memo. at 11.)  Rather, numerous and burdensome individual inquiries of each student will be required to determine who paid their tuition and fees.  And for fees that are not paid by all students (or type of student), a further inquiry would be required to determine not only who paid the fee, but whether the fee was even paid in the first place.

Plaintiff does not identify what records he contends can be used to establish "[a]ll persons whom paid tuition" and "[a]ll persons whom paid fees."  However, a review of Plaintiff's records demonstrates that ascertainability of the class would require a highly individualized fact finding.  For the spring 2020 semester, Plaintiff was charged a total of $20,577.  (King Decl., Ex. D.)  The breakdown of the total charge is:  $19,500 in tuition; General Student Fee of $720; Lab Fee of $50; and $307 in other non-fee or tuition charges.  (*Id.*)  UNH then received a total payment of $20,577 for Plaintiff's 2020 tuition and fees.  (*Id.*)  The payment sources listed in UNH's payment register are:  $11,000 paid by two scholarships; $2,721 paid from a student loan; and $6,836 paid by check.  (*Id.*)

10986507

But there is nothing in UNH's payment record that indicates who is making the payments on the loan that Plaintiff took out to pay his spring 2020 tuition and fees.  Nor does the payment record reflect who made the payment by check.  With respect to Plaintiff's loan, it was only through Plaintiff's deposition that UNH learned that Plaintiff (and not his parent or other third party) would be making the payments on the loan.  (*Id.*, Ex. C, at 79:9-80:12.)  With respect to the check listed for payment of Plaintiff's spring 2020 tuition and fees, it is not possible to tell from the payment record who the payor on the check was.  In order to determine that information, UNH would have to conduct an individual review of Plaintiff's payment records (to the extent such records still exists).[3]  (Maniatis Decl. at ¶ 9.)  The same is true for all students. Determining the members of the proposed class would require a student-by-student review of the payment records for each student account where a payment was made by check or online payment. (*Id.*)  And even then, further individualized inquiries—such as a deposition or mini-hearing—would be required to determine whether there are other individuals who paid each student's tuition or fees, including for student accounts where cash payments were made, or to confirm that the payor for the check or online payment was the actual source of the funds. Indeed, it was only during Plaintiff's deposition that UNH learned that Plaintiff and his father each paid a portion of the $6,836 check amount.  (King Decl., Ex. C, Wnorowski Tr. at 70:12-16, 77:5-6, 80:13-81:5.).  In other words, a deposition was necessary to determine that Plaintiff's father is a member of Plaintiff's proposed classes.

One district court recently addresses these very issue in a case in which the plaintiff sought certification of similarly defined class.  In *Evans v. Brigham Young University*, the

---

[3] This review would be further complicated by the fact that UNH does not maintain payment records indefinitely and therefore may no longer have this information in its records.  (Maniatis Decl.at ¶ 9).

plaintiff sought certification of "all people who paid tuition and/or fees to attend in-person class(es) during the Winter 2020 semester." Case No. 1:20-cv-100-TS, 2022 WL 596862, at *3-4 (D. Utah Feb. 28, 2022). There, the court denied certification finding that the plaintiff's proposed class was not ascertainable because determining whether a particular individual was a member of the class would require the court to individually inquire into each student to determine whether it was the student or a third party who paid the student's tuition and fees. *Id.* at *4. The same applies here—determining the members of Plaintiff's proposed classes would require individual inquiries of the more than 6,000 students enrolled in UNH during the spring 2020 semester. Such an inquiry is not workable, and Plaintiff's motion to certify the class should be denied.

### B.    Plaintiff's Proposed Tuition Class Is Overbroad

Plaintiff's Proposed Tuition Class also seeks to include all students who were "denied live in-person instruction from March 9, 2020 until the end of the Semester." (MCC at 1.) However, UNH offered both online and in-person courses during the spring 2020 semester. (Maniatis Decl. at ¶ 6.) Indeed, during the spring 2020 semester, 2,205 students were enrolled in at least one online course prior to the university's transition to remote instruction due to the COVID-19 pandemic. (*Id.*) Further, there were 3,357 total enrollments for online classes. (*Id.*) Theses students had already chosen to enroll in an online course before UNH moved all in-person classes to remote instruction in March, 2020. Accordingly, they cannot be included in the Proposed Tuition Class because they chose the course delivery method that Plaintiff alleges, in the Amended Complaint, was of a lesser value. (*See, e.g.*, Am. Compl. at ¶ 104.) Their decision to take online classes before the onset of the pandemic shows that they valued UNH's online courses the same (or possibly more) as UNH's in-person instruction since UNH charged the

15

same tuition regardless of whether the students took the classes in-person or online.  (Maniatis Decl. at ¶ 7.)

The district court in the *Evans* case also addressed this issue.  2022 WL 596862, at *4. There, the proposed class included students who paid "to attend *in-person class(es)* during the Winter 2020 semester."  *Id.* at *3 (emphasis in original.)  However, the university in that case, like UNH, offered students the option of taking online course before the transition to remote instruction in March 2020.  *Id.* at *1. As a result, the court held that even if it was determined that a student paid their own tuition, the court would still have to "individually inquire whether they made those payments to attend in-person classes."  *Id.* at *4.  Here, the same applies, and certification of Plaintiff's Proposed Tuition Class should be denied.

## III.    PLAINTIFF CANNOT SATISFY RULE 23(a)'s TYPICALITY REQUIREMENT

Plaintiff cannot satisfy the typicality requirement of Rule 23(a) because his claims are not typical of the putative class.  The typicality prong of Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. 23(a)(3).  "Typicality requires that 'the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Monaco v. Sullivan*, 737 F. App'x 6, 15-16 (2d Cir. 2018) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1332 (2017)).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  "Among the considerations are whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same

16

course of conduct." *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 74 (D. Conn. 2013) (internal quotation marks and citation omitted).

Here, Plaintiff fails to make a showing of typicality.  Instead, Plaintiff makes conclusory assertions that Plaintiff and all proposed members of the classes "contracted with [UNH] for in-person, on-campus instruction, educational services, and use of facilities in exchange for payment of tuition and fees" and that all class members were denied the "benefit of their bargain" because UNH "stopped providing in-person, on-campus instruction and educational services, and use of facilities."  (MCC Memo. at 8-9.)  These allegations, however, ignore the differences between Plaintiff and other members of the proposed classes.

Plaintiff was a full-time undergraduate student during the spring 2020 semester.  As a result, Plaintiff paid different tuition and fee amounts from those paid by other members of the proposed class who were part-time undergraduate students, evening undergraduate students, and full-time and part-time graduate students.  (King Decl., Ex. A, at UNH001641-1642, Ex. B at UNH002185-2186.)  In addition, as an undergraduate student, Plaintiff's claims are not typical of graduate school students.  Indeed, Plaintiff's contractual relationship with UNH is different from that of a graduate student's contractual relationship with UNH.  For example, UNH published a 2019-2020 course catalog for undergraduate students that published the tuition and fee amounts for undergraduate students and a separate 2019-2020 course catalog that published the tuition and fee amounts for graduate students.  (King Decl. at Ex. A and B.)  As an undergraduate student, the 2019-2020 graduate course catalog would have no application to Plaintiff, and indeed Plaintiff testified that he does not remember reviewing the graduate course catalog or other materials directed to graduate students.  (King Decl., Ex. C, Wnorowski Tr. at 115:14-

116:2.)

Plaintiff's claims are also not typical of class members who chose to take part in at least one online course during the spring of 2020. Unlike Plaintiff, students who elected to take one or more online class were already participating in remote instruction before any pandemic-related restrictions were instituted. Further, Plaintiff's use of the services provided by UNH differed from other students both before and after the pandemic. (*Id.* at 104:25-106:13.) While UNH offered many services online, Plaintiff testified that he did not use many of the services offered remotely by UNH (or could not remember if he did), while other students did. (*Id.* at 103:9-11, 108:9-11.) As a result, Plaintiff's arguments regarding damages and materiality are necessarily different from those of other class members.

For these reasons, Plaintiff is not typical of the proposed classes, and certification should be denied.

## IV.   PLAINTIFF CANNOT SATISFY RULE 23(b)

Plaintiff has not shown the proposed Rule 23(b) classes satisfy the predominance or superiority requirements.

### A.   Plaintiff's Breach of Contract Claims Turn On Highly Individualized Evidence

Plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3) because he has failed to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance requirement is more demanding than Rule 23(a)." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (internal quotation marks omitted). A court "examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or

18

whether individualized proof will be needed to establish each class member's entitlement to relief." *Id.* (internal quotation marks omitted). "Predominance requires a further inquiry, however, into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.* "Ultimately, the court must decide whether classwide resolution would substantially advance the case . . . examining whether certification will reduce the range of issues in dispute and promote judicial economy." *Id.* (citation and internal quotation marks omitted).

   In evaluating the predominance requirement, "district courts must do more than take the plaintiff's word that no material differences exist." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 97 (2d Cir. 2018). "Under Rule 23(b)(3), the district court has a 'duty,' before certifying a class, to 'take a close look' at whether the common legal questions predominate over individual ones." *Id.* (quoting *Comcast*, 569 U.S. at 34.) "Where individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 36 (S.D.N.Y. 2020) (quoting *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017)). Here, Plaintiff cannot provide generalized proof regarding (1) the essential terms of a contract between UNH and members of the proposed classes; (2) whether UNH's transition to remote instruction was a material breach; (3) whether UNH's transition to remote transaction caused the injuries Plaintiff alleges; (4) damages; or (5) Plaintiff's claims for unjust enrichment.

   ### 1.    Plaintiff Cannot Demonstrate The Existence Of A Contract On A Class-Wide Basis

   Plaintiff cannot establish an essential element of his breach of contract claim—namely,

the formation and existence of an agreement[4]—based on class-wide proof.  Plaintiff asserts that "regardless of what major, scholarship or other ancillary agreements students may have had with Defendant" that "all members of the proposed Classes were subject to the same contractual arrangement."   But Plaintiff never cites any actual language that established the "contractual arrangement" he alleges exists with respect to tuition and fees.  (MCC Memo. at 13.)  And Plaintiff provides no explanation as to how he intends to demonstrate the existence of that "contractual arrangement" on a class-wide basis.  A review of the record shows that contrary to Plaintiff's conclusory assertions, this will require a highly individualized inquiry that is not susceptible to generalized proof.

First, Plaintiff's proposed class definitions include individuals who do not have standing to assert claims against UNH for breach of contract.  *See Denny v. Deutsch Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing").[5]  As discussed above, Plaintiff's Proposed Tuition Class and Proposed Fee Class each include non-students, such as parents, employers, relatives and other third-parties.  Plaintiff is an example:  UNH learned during Plaintiff's deposition that as the class is defined, Plaintiff's

---

[4] *See Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, (2014) ("The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages.").

[5] Plaintiff cites a number of cases from state courts and federal courts outside of the Second Circuit that certified classes seeking reimbursement for tuition and fees from colleges and universities because of the COVID-19 pandemic.  *See* MCC Memo. at 2 n.1 (citing *Arredondo v. Univ. of La Verne*, Case No. 2:20-cv-07665, Order (C.D. Cal. Feb. 2, 2022); *Waitt v Kent State Univ.*, Case No. 2020-00392, Order (Ohio Ct. Cl. Feb. 11, 2022); *Smith v. The Ohio State Univ.*, Case No. 2020-00321, Order (Ohio Ct. Cl. Jan. 21, 2022); *Weiman v. Miami Univ.*, Case No. 2020-00614, Order (Ohio Ct. Cl. Dec. 13, 2021);*Cross v. Univ. of Toledo*, Case No. 2020-00274, 2021 WL 1822676 (Ohio Ct. Cl. Apr. 26, 2021); *Wright v. Southern N.H. Univ.*, No. 20-cv-609, Order (D. N.H. Sept. 22, 2021); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813, Order (S.D. Fla. Sept. 9, 2021); *Little v. Grand Canyon Univ.*, Case No. CV-20-00795, 2022 WL 266726 (D. Ariz. Jan. 28, 2022); *Alexander v. Florida International University Board of Trustees*, Case No. 2021-009869-CA-01(44), Order (Fla. 11th Ct. Ct. Dec. 30, 2021).  None of these cases, however, addressed all of the standing and predominance issues raised here.  On that ground, and others, these cases are distinguishable and not persuasive.

20

father is a member of both the Proposed Tuition Class and the Proposed Fee Class because he

paid a portion of Plaintiff's tuition and fees for the spring 2020 semester.  (King Decl., Ex. C,

Wnorowski Tr. at 70:12-16, 77:5-6, 80:13-81:5.)  Plaintiff does not address the inclusion of non-

students in his proposed class definitions.  Indeed, Plaintiff does offer any facts or legal authority

to support the argument that his father, or any non-student who pays tuition or fees on behalf of a

UNH student, has standing to pursue the breach of contract claims that Plaintiff alleges in this

case.  This is no doubt because this court, as well as other courts, has consistently held that non-

students who pay tuition and fees on behalf of a student lack standing to assert breach of contract

and unjust enrichment claims.  *See e.g.*, *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 26 (D.

Conn. 2021) (parents seeking to recover tuition and fees they paid on students' behalf could not

establish injury-in-fact and therefore lacked standing to assert breach of contract); *Espejo v.*

*Cornell Univ.*, 523 F. Supp. 3d 228, 236 (N.D.N.Y. 2021) (father lacked standing to assert claims

against the university for breach of contract claims for unrefunded tuition and fees for

unrefunded tuition); *Gociman v. Loyola Univ. of Chicago*, 515 F.Supp.3d 861, 866 (N.D. Ill

2021) (parents lacked standing to assert claims for unrefunded tuition against university); *Fiore*

*v. Univ. of Tampa*, No. 20-CV-3744 (CS), 2021 WL 4925562, at *11 (S.D.N.Y. Oct. 20, 2021)

(collecting cases and concluding that parents of students lacked standing to pursue breach of

contract claim for unrefunded tuition and fees).  Thus, certification of Plaintiff's proposed

classes will require an individualized inquiry to determine whether each class member has

standing because "no class may be certified that contains members lacking Article III standing."

*Denny*, 443 F.3d at 264.

Recognizing this very issue, the district court in *Little v. Grand Canyon University I*,

recently denied certification.  No. CV-20-00795-PHX-SMB, 2021 WL 4263715, at *1 (D. Ariz.

Sept. 1, 2021).  There, plaintiff sought to certify a class that was defined to include "[a]ll persons who paid fees for or on behalf of students."  *Id.* at *2.  The *Little* court found that this class definition included "employees, parents, friends, relatives, or anyone else who potentially paid for tuition on behalf of a student."  As a result, the court held that the class could not be certified because it "includes numerous individuals who lack standing to sue."  *Id.* at *2.[6]  Here, the same should apply and certification of Plaintiff's proposed classes should be denied.

Second, Plaintiff has not identified any express, written agreement by UNH that promised in-person, on-campus instruction and services in exchange for the payment of tuition and fees (there is none).  Nor has Plaintiff identified any specific promise (there is none).  Plaintiff instead asserts that "all members of the proposed Classes were subject to the same contractual arrangement" because "all proposed class members were subject to the same standardized documents and representations made by Defendant through its application, admissions, enrollment, registration, and payment processes."  (MCC Memo. at 12-13.)  Plaintiff's contention, however, ignores the impact that the myriad differences between proposed class members will have on any merits litigation in this case.  UNH's student body includes undergraduate students, graduate students, full-time students, part-time students and evening students.  Students also enroll in a variety of degree programs.  UNH offers different applications, registrations and materials (including on its website) based on student enrollment status, *i.e.* undergraduate or graduate students.  This includes different course catalogs for undergraduate and graduate students.  (King Decl., Ex. A & B.)

---

[6] Plaintiff cites *Grand Canyon II* in his Memorandum of Law, but does not address *Grand Canyon I.* (MCC Memo. at 2.)  Following *Grand Canyon I,* the plaintiff there amended his proposed class definition so that it no longer included "[a]ll people who paid fees for or on behalf of students. . . ." *Little v. Grand Canyon Univ. ("Grand Canyon II"),* No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *4 (D. Ariz. Jan. 28, 2022).

22

In addition, the tuition and fees that UNH charged students varied significantly based on whether they were enrolled as an undergraduate or graduate student and whether they attended UNH on a full-time or part-time basis. (*Id.*, Ex. A, at UNH001641-1642, Ex. B at UNH002185-2186.) A review of UNH's 2019-2020 tuition rates for undergraduate and graduate students shows the difficulty of class-wide proof on this issue. The tuition paid by graduate students for the spring 2020 semester was different than the tuition paid by undergraduate students (like Plaintiff), and graduate tuition further differed based on each graduate student's enrollment status and degree program. (*Id.*) The same is true for fees. Only undergraduate students paid the General Student Fee, and like tuition, the amount of the General Student fee varied based on student enrollment status (*i.e.* full-time or part-time). (*Id.*) Graduate students paid the Graduate Student Fee, which also varied based on enrollments status. (*Id.*) Further, certain fees—like the Lab Fee that Plaintiff was charged—were not charged to every student, and even when it was charged to a student, the amount varied based on the student's course for which the fee was charged. For example, Plaintiff paid one of the lowest fee amounts of $50, while other full-time undergraduate students could have paid as much as $4000. (*Id.*, Ex. A, at UNH001642, Ex. B at UNH002186.)) And while it is not clear whether Plaintiff seeks certification for fees other than the General Student Fee and the Lab Fee, they are the only fees that Plaintiff paid. Accordingly, they are the only fees for which he can assert a claim.

Because of the many differences between proposed class members, determining the existence and essential terms of any contractual arrangement between UNH and its students (or other non-student payors) will require a highly individualized inquiry. In order to address the differences, the parties would need to litigate what tuition and fees were charged to each student, and based on that what terms comprised any contract with UNH. Plaintiff makes no attempt to

address the impact the differences in student enrollment status and degree programs would have

on his ability to offer class-wide proof.  Rather, Plaintiff treats full-time undergraduate students

the same as part-time graduate students.  In doing so, Plaintiff fails to carry his burden to

demonstrate that "questions of law or fact common to class members predominate over any

questions affecting only individual members."  *Audet v. Fraser*, 332 F.R.D. at 63.

### 2.    Materiality Cannot Be Shown By Class-Wide Proof

Plaintiff cannot show a material breach of any alleged contract through class-wide proof.

Under Connecticut law, "contract law has always distinguished between material and immaterial

breaches. If a breach is immaterial, the existing rights of the parties do not change." *Fishman v.*

*SmartServ Online, Inc.*, No. X05CV0172810S, 2003 WL 536629, at *9 (Conn. Super. Ct. Feb.

11, 2003) (internal quotation marks omitted).  Thus, determining whether an alleged breach was

material is a complex and fact-intensive inquiry, which is inherently individualized.

"In *Bernstein v. Nemeyer,* 213 Conn. 665, 672, 570 A.2d 164 (1990), [the Connecticut] Supreme

Court endorsed the use of the multifactor test set forth in the Restatement (Second) of Contracts,

supra, § 241, when determining whether a breach is material." *Shah v. Cover-It, Inc.*, 86 Conn.

App. 71, 75 (2004).

> Section 241 of the Restatement (Second) of Contracts provides: In determining
> whether a failure to render or to offer performance is material, the following
> circumstances are significant: (a) the extent to which the injured party will be
> deprived of the benefit which he reasonably expected; (b) the extent to which the
> injured party can be adequately compensated for the part of that benefit of which
> he will be deprived; (c) the extent to which the party failing to perform or to offer
> to perform will suffer forfeiture; (d) the likelihood that the party failing to
> perform or to offer to perform will cure his failure, taking account of all the
> circumstances including any reasonable assurances; [and] (e) the extent to which
> the behavior of the party failing to perform or to offer to perform comports with
> standards of good faith and fair dealing. . . . The standards of materiality [are] to
> be applied in the light of the facts of each case in such a way as to further the
> purpose of securing for each party his expectation of an exchange of
> performances. [Section 241] therefore states circumstances, not rules, which are

24

to be considered in determining whether a particular failure is material.

*Id.* at 75-76. "The standard of materiality must be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. [Section 241] therefore states circumstances, not rules, which are to be considered in determining whether a particular failure is material." *669 Atl. St. Assocs. v. Atl.-Rockland Stamford Assocs.*, 43 Conn. App. 113, 128 (1996) (internal quotation marks omitted). A material breach "as opposed to an incidental breach has been aptly described as one that is so important that it vitiates or destroys the entire purpose for entering into the contract." *Carlyle Johnson Machine Co., LLC v. April*, No. CV 970481243S, 2000 WL 234311, at * 3 (Conn. Super. Ct. Feb. 10, 2000); *World Props., Inc. v. Arlon, Inc.*, 663 F.Supp.2d 98, 109 (D. Conn. Oct. 9, 2009) ("[F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract.").

Because materiality presents a highly individualized inquiry, courts have held that materiality prevents class certification in breach of contract cases. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1273-74 (11th Cir. 2009) ("Even positing a common contract, this testimony illustrates the existence of significant individualized issues with respect to breach, materiality, and damages. Sorting out and proving the claims, if any, of these class members, and others with similar understandings (or, at least, understandings as substantially different from the one [Plaintiff] purports to have had), would require substantial individualized evidence different from and in addition to that which [Plaintiff] would proffer to establish his own claim."); *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 521-22 (D. Utah 2017) (denying class certification because question of materiality created "individualized breach issues for each

25

individual driver"); *Simms v. Jones*, 296 F.R.D. 485, 508-09 (N.D. Tex. 2013), *aff'd sub nom.
Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) (finding that for fans asserting breach of contract
because of an obstructed view "an individualized inquiry to determine the extent of obstruction is
necessary for purposes of gauging the materiality of the breach and the amount of damages
suffered by each class member"); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 734-35
(S.D. Fla. 2007) (denying class certification because it "would lead to a situation where the trier
of fact had to make individualized determinations as to materiality for every class member").

Here, Plaintiff's claims will require a highly individualized inquiry regarding each
student's experience and expectations at UNH during the spring 2020 semester with respect to
tuition and separately with respect to fees. Even if Plaintiff could show a technical breach
(which he cannot), he would still have to show that the breach was material to each class
member. In other words, that the breach "vitiate[d] or destroy[ed] the entire purpose for entering
into the contract." *See Carlyle Johnson Machine Co.*, 2000 WL 234311, at * 3. A review of the
evidence, demonstrates that Plaintiff cannot make this showing through generalized or class-
wide proof.

Plaintiff asserts without evidence that all proposed class members were subject to an
"identical breach of the contract by Defendant" because UNH "fail[ed] to provide them with in-
person, on-campus education, educational service, and use of facilities after March 9, 2020."
(MCC Memo. at 12-13.) Plaintiff's conclusory assertions ignore the evidence regarding the
remote instruction and services that UNH provided during the second half of the spring 2020
semester as well as the numerous differences between proposed class members. Plaintiff does
not address how the Court could determine on a class-wide basis whether UNH's alleged breach

26

10986507

was material with respect to either proposed class.  The evidence shows that class-wide proof is not possible.

With respect to the Proposed Tuition Class, individualized questions abound as to whether class members viewed UNH's shift to remote instruction due to the COVID-19 pandemic as material.  Students who completed their classes through remote instruction after March 2020, still received the credits and curriculum they had registered for at the start of the semester.  (Maniatis Decl. at ¶ 17.)  This includes Plaintiff who admitted during discovery he received all of the credits he was registered for during spring 2020.  (King Decl., Ex. C, Wnorowski Tr. at 36:11-39:18.)  Thus, many students may not believe that the transition to remote instruction "vitiate[d] or destroy[ed] the entire purpose for entering into the contract" since they were able to complete their studies.  *Carlyle Johnson Machine Co.*, *LLC*, 2000 WL 234311, at * 3.  Indeed, Plaintiff himself testified that his classes in the spring 2020 semester were not of lesser value than they were before the classes transitioned to remote instruction.  (*Id.* at 64:5-65:12.)  For students who were already enrolled in at least one online course at the start of the spring 2020 semester, a shift to remote instruction may not have been material since they had already elected to take online courses.  Moreover, other students may view the transition to remote instruction as a benefit (rather than a material breach) because they would not have been willing to attend classes in-person in light of the health threat posed by COVID-19.  These individualized issues go directly to the heart of Plaintiff's claim and preclude generalized proof with respect to the element of materiality.

The same is true of the Proposed Fee Class.  UNH continued to provide a significant number of services after March, 2020 in a remote or virtual format.  (Maniatis Decl. at ¶¶ 15-16.) Students had remote access to activities and services, including online exercise programs,

27

Student Health services and many other services.  (*Id.*)  UNH also continued to provide remote access to student services, such as the Career Development Center, Myatt Center and many others.  (*Id.*)  UNH used the amounts it collected in tuition and fees to provide these services and more, meaning that students received the value of the fees they paid for the spring 2020 semester.  Determining whether students lost access to services and activities that were important to them will require an individualized inquiry.  For example, Plaintiff testified that he used the recreation center in-person before the COVID-19 pandemic, but that he did not take advantage of any of the virtual exercise programs offered after March, 2020.  (King Decl. Ex. C, Wnorowski Tr. at 47:24-52:14, 104:25-106:13.)  Other students, however, may not have used the recreation center in-person, but may have taken advantage of virtual exercise programs because they found them beneficial.  Thus, the closure of the recreation center may not have been a loss to them, and access to virtual programs may even have been a gain.  Moreover, while Plaintiff makes much of the fact that UNH closed its campus, many of UNH's students do not live on campus and therefore may not have considered the loss of in-person services to be a material breach. Because the inquiry into materiality can only be answered through highly individualized inquiries, Plaintiff cannot demonstrate predominance with the respect to either proposed class.

### 3.    Causation Cannot Be Demonstrated On a Class-Wide Basis

Plaintiff also cannot show class-wide proof that any alleged injury suffered by the members of either proposed class was caused by an alleged breach by UNH.  *See O'Donnell v. AXA Equitable Life Ins. Co.*, 210 Conn. App. 662, 681 (2022) ("[I]n order to recover for breach of contract, a plaintiff must prove that he or she sustained damages as a direct and proximate result of the defendant's breach.").

28

While Plaintiff does not address causation, like materiality, it will depend on individual circumstances.  A student who signed up for online classes before the transition to remote instruction in spring 2020, would not be caused any injury by the transition of in-person classes to remote instruction.  And a student who would not have attended in-person classes because of COVID-19, would not be caused any injury (and likely was helped) by the transition to remote instruction.  Similarly, a student who did not use the recreation facilities before March, 2020, would not be caused any injury by the closure of that facility due to the COVID-19 pandemic.  The same is true for an undergraduate student who never took advantage of the Graduate Student Center; they would not be caused any injury by closure of that service.  Thus, the question of causation – like that of materiality—can only be resolved though depositions of and discovery from each individual putative class member.[7]  Accordingly, Plaintiff cannot demonstrate predominance.

### 4.    Individualized Damages Inquiries Predominate

In addition to failing to show that the elements of his claim are subject to class-wide proof, Plaintiff cannot demonstrate that damages are measurable on a class-wide basis.  In *Roach v. T.L. Cannon Crop.*, the Second Circuit explained that though "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," "damages questions should be considered at the certification stage when weighing predominance issues . . . ."  778 F.3d 401, 408-409 (2d Cir. 2015).  Thus, individualized damages inquiries remain a factor that a court should consider in undertaking the predominance analysis.  *See id.* at 408.  With respect to damages "at the class-certification stage (as at trial), any model supporting a plaintiff's damages

---

[7] This further highlights the overbroad nature of Plaintiff's proposed classes because non-student payors did not take classes, attend activities or use in-person services before the COVID-19 pandemic and therefore cannot show causation.

case must be consistent with its liability case," and "courts must conduct a rigorous analysis to determine whether that is so." *Comcast*, 569 U.S. at 35. "For purposes of Rule 23(b)(3) class certification, the model for determining class-wide damages must measure damages that result from the class's asserted theory of injury." *Mazzanti v. Gen. Elec. Co.*, No. 3:13CV1799 (WWE), 2017 WL 923905, at *5 (D. Conn. Mar. 7, 2017) (internal quotation marks omitted).

Plaintiff cannot meet this burden. In attempt to gloss over this, Plaintiff alleges that he seeks as damages "the prorated amount of tuition and fees that Plaintiff, and students like Plaintiff, paid for the off-campus, online portion of the Spring 2020 Semester, adjusted for the limited services that Defendant provided Plaintiff and students like Plaintiff." (MCC Memo. at 13.) Plaintiff further argues that he "will calculate damages based on net revenue collected by Defendant for the Spring 2020 semester in the form of tuition and fees, divided by the number of students enrolled during the spring 2020 semester, further divided by the percentage of days remaining in the Spring 2020 semester when Defendant ceased in-person instruction and required students to vacate campus." (MCC Memo. at 13.) Putting aside the fact that Plaintiff's purported damages calculation fundamentally misunderstands UNH's finances and the impact of COVID-19, it also ignores that any damages in this action would be inherently individualized and not appropriately measured by such a rudimentary calculation based on overbroad elements.

Under Connecticut law, "[i]n an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed." *Flater v. Grace*, 291 Conn. 410, 426 n.11 (2009). As the Connecticut Supreme Court has explained:

> [i]t is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party . . . is entitled to retain nothing

30

> in excess of that sum which compensates him for the loss of his
> bargain. . . . Guarding against excessive compensation, the law of
> contract damages limits the injured party to damages based on his
> actual loss caused by the breach. . . .  The concept of actual loss
> accounts for the possibility that the breach itself may result in a
> saving of some cost that the injured party would have incurred if
> he had had to perform. . . .  In such circumstances, the amount of
> the cost saved will be credited in favor of the wrongdoer . . . that
> is, subtracted from the loss . . . caused by the breach in calculating
> [the injured party's] damages.

*FCM Grp., Inc. v. Miller*, 300 Conn. 774, 84 (2011) (internal citations and quotations omitted);

*see also Carrano v. Yale–New Haven Hosp.,* 279 Conn. 622, 646 (2006) ("[d]amages are

recoverable only to the extent that the evidence affords a sufficient basis for estimating their

amount in money with reasonable certainty." (internal quotation marks omitted).

Here, any proper analysis of damages will require countless individualized inquiries

Plaintiff does not (and cannot) dispute that putative class members received value for the tuition

and services that UNH provided for the second half of the 2020 spring semester.  Indeed,

Plaintiff admitted during his deposition that he received the 15 credits he expected to receive for

the spring 2020 semester and completed the curriculum for those courses.  (King Decl., Ex. C,

Wnorowski Tr. at 36:11-39:18.)  Plaintiff also contends that damages may be adjusted "with

respect to any credit Defendant might be owed" for the services provided.  (MCC Memo. at 14.)

However, Plaintiff fails to present any methodology to account for how that would be done.

 Questions regarding damages are wide ranging and varied.  For example, some UNH

students were already taking classes online when UNH transitioned to remote instruction in

March, 2020, and therefore would not have a claim for damages.  Other students may not view

the transition to online classes as an "actual loss" because they were able to complete their

curriculum and earn their expected credits without putting their health at risk from in-person

classes.  For some students the transition may have "result[ed] in a saving[s]" because they no

31

longer incurred costs associated with attending classes in-person, such as those associated with commuting to class. For example, Plaintiff was a commuter student during spring 2020 and he admitted that he saved on costs related to gas. (King Decl., Ex. C, Wnorowski Tr. at 122:21-123:13.)

Further, because students used and valued services differently, the "actual loss" each student suffered will be an individual issue. There are also differences in financial aid calculations that mean some class members cannot show any injury resulting from any alleged breach. And because financial aid is highly individualized, any recalculation of tuition and fees as a result of the transition to remote instruction may mean that the amount some students owe will change. Moreover, Students that received scholarships covering all tuition and fees will have had no out of pocket costs and therefore no damages. In addition, some students received COVID-19 grants (in varying amounts) that must be subtracted from any award of damages in this litigation because the students would not have received them but for the pandemic. And based on Plaintiff's definition of the class, students who did not pay their tuition and fees (because someone else did) would not be damaged because they would not be included in the class. As discussed above, individual inquiries would be needed to determine who paid each student's tuition and fees. *See supra* p. 12-15.

All of these issues can only be resolved through an individualized inquiry that is nowhere accounted for in Plaintiff's alleged damages methodology. Even if Plaintiff were somehow able to show that the education and services that UNH provided during the second half of the spring 2020 semester were less valuable in some way (he cannot), the highly individualized differences in how tuition and fees are paid, student expectations and past refunds (among other issues) would preclude any calculation of damages on a class-wide basis.

10986507

### B.    Plaintiff Cannot Demonstrate Predominance On His Unjust Enrichment Claims

In addition to his breach of contract claims, Plaintiff cannot satisfy the predominance requirement for his unjust enrichment claims.  Plaintiff claims that "[w]hether Defendant was unjustly enriched by retaining tuition payment of Plaintiff and the Tuition Class" and "[w]hether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class" are common questions.  (MCC Memo. at 7-8.)  Plaintiff's assertions, however, are only statements regarding his unjust enrichment claims and not questions that would lead to "common answers apt to drive resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.  Indeed, courts in other jurisdictions have recognized the difficulty of proceeding with a class action on an unjust enrichment claim. "[C]ommon questions [of fact] will rarely, if ever, predominate an unjust enrichment claim." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). Moreover, "equitable considerations surrounding [the putative class member's] unique understanding and expectations" make "unjust enrichment claims . . . inherently unsuitable for class certification." *Collinge v. Intelliquick Delivery, Inc.*, No. 2:12-cv-00824 JWS, 2015 WL 1292444, at *14 (D. Ariz. Mar. 23, 2015) (citing *Vega*, 564 F3d at 1274).  Here, the same is true and Plaintiff's unjust enrichment claims cannot be certified because they are not suitable for class certification.

### C.    The Proposed Class Action Is Not Superior to Other Methods of Adjudication

In addition to predominance, Rule 23(b)(3) requires a plaintiff to show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) provides a "'non-exhaustive' and 'nonexclusive'" list of factors relevant to the superiority requirement: "(A) the class members'

interests in individually controlling the prosecution or defense of separate actions; (B) the extent

and nature of any litigation concerning the controversy already begun by ... class members; (C)

the desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

"[W]hile these factors, structurally, apply to both predominance and superiority, they more

clearly implicate the superiority inquiry." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82

(2d Cir. 2015); *see also In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 229, 242 (2d Cir.

2012) ("[T]he plain text of Rule 23(b)(3) states that one of the 'matters pertinent' to a finding

of predominance is 'the likely difficulties in managing a class action.'") (quoting Fed. R. Civ. P.

23(b)(3)).

Here, Plaintiff cannot show that a class action would be superior to other methods of

adjudication. Given the number of individualized issues raised above, including whether UNH's

transition to remote instruction was a material breach for each student and whether it was the

cause of any student's injury, there would be significant difficulties and inefficiencies in

proceeding with a class action. Plaintiff, however, does not explain how these issues can be

managed in the class action context. Accordingly, Plaintiff has failed to show superiority, and

the proposed classes cannot be certified.

## V.     PLAINTIFF CANNOT SATISFY RULE 23(b)(2)

Plaintiff's proposed classes cannot be certified under Rule 23(b)(2) either. Certification

under Rule 23(b)(2) is improper "when—despite the suitability of generalized injunctive or

declaratory relief—each class member would [also] be entitled to an individualized award of

monetary damages." *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012)

(internal quotation marks omitted). As the Second Circuit has explained, "the Supreme Court

has counseled that 'Rule 23(b)(2) applies *only* when a single injunction or declaratory judgment

would provide relief to each member of the class.'" *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146

(2d Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). "Put another

way, a class may *not* be certified under Rule 23(b)(2) if *any* class member's injury is not

remediable by the injunctive or declaratory relief sought." *Id.*

Here, Plaintiff seeks monetary relief, not declaratory or injunctive relief. Plaintiff tries to

sidestep this by asking the Court for "declaratory and injunctive relief, declaring that Defendant

has wrongfully retained the monies that he and the other Class members paid in the form of

tuition and fees, and enjoining Defendant from retaining the prorated, unused portion for these

tuition and fees." (MCC Memo. at 16.). But Plaintiff's word choice couched in injunctive and

declaratory relief does not transform his claim for monetary damages into injunctive or

declaratory relief. Enjoining UNH from retaining tuition and fee amounts is indistinguishable

from the relief that Plaintiff seeks as damages under Rule 23(b)(2). If UNH is "enjoin[ed] . . .

from retaining" a portion of the tuition and fee amounts; (Am. Compl. at p.33); then it would

only follow that UNH would return the amounts to the student and/or non-student payors, which

is the same relief Plaintiff seeks as damages. Because Plaintiff seeks an individualized award of

monetary damages for each putative class member, the proposed classes cannot be certified

under Rule 23(b)(2).

## VI.   PLAINTIFF CANNOT SATISFY RULE 23(c)(4)

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained

as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The rule may be

applied "to certify a class on a particular issue even if the action as a whole does not satisfy Rule

23(b)(3)'s predominance requirement." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 225

(2d Cir. 2006). However, the Second Circuit has explained that issue certification under Rule 23(c)(4) is not appropriate where a "number of questions . . . would remain for individual adjudication" or if "issue certification would not "materially reduce the range of issues in dispute and promote judicial economy." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008), abrogated on other grounds by *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) (citing *Robinson v. Metro–N. Commuter R.R.,* 267 F.3d 147, 168 (2d Cir.2001)).

Rule 23(c)(4) "should not be invoked merely to postpone confronting difficult certification questions . . . and indeed, overly aggressive application of Rule 23(c)(4) would nullify Rule 23(b)(3)'s predominance requirement, as a class may be certified only as to the common issues raised . . . ." *In re LIBOR-Based Fin. Instruments Antitrust Lit.*, 299 F.Supp.3d 430, 464 (S.D.N.Y. 2018) (citation and internal quotations omitted). "[T]he result would be automatic certification in every case where there is a common issue, a result that could not have been intended." *Id.* (citation and internal quotation marks omitted). Further, "[a] class action movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment (in which, by definition, it will 'predominate')" when more substantial individual issues remain." *Id.* (citing 1 McLaughlin on Class Actions § 4:43 (14th ed.) (2017)). "[T]he Court is not obligated to implement Rule 23(c)(4) . . . on its own initiative. *Id.* Rather, it "remains 'the plaintiff's burden to show how the action may be [modified] to avoid certification problems.'" *Id.* at 465 (quoting *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993)) (concluding that the court will only consider certification under Rule 23(c)(4) "only where plaintiffs have set forth such proposal in sufficient detail.").

Here, Plaintiff contends that if Rule 23(b)(3)'s predominance requirement is not met (and

it is not), then Plaintiff's proposed classes should be certified under Rule 23(c)(4) as to

Defendant's liability issues, which "would include all substantive elements of the Plaintiff's, and

proposed Class members' breach of contract and unjust enrichment claims for tuition and fees."

(MCC Memo. at 17.)  Plaintiff, though he bears the burden to do so, provides no detail

explaining how certifying Defendant's "liability issues" would avoid the certification problems

that prevent certification under Rule 23(b)(3).  This is because it would not.  As discussed above,

Plaintiff's failure to meet the predominance requirements under Rule 23(b)(3) is not limited to

issues related to damages.  *See supra* p. 19-29 and 32-32.  To the contrary, individualized issues

predominate over common issues with respect to the very substantive elements of Plaintiff's

claims.

Further, Plaintiff provides no explanation as to how certification of "Defendant's liability

issues" will "materially reduce the range of issues in dispute and promote judicial economy."

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d at 234.  This is also because it would not.  Plaintiff's

request for certification under Rule 23(c)(3) is not an attempt to materially reduce the range of

issues; it is an attempt to sidestep the requirements of Rule 23(b)(3) that Plaintiff cannot meet.

Because Plaintiff has failed to meet his burden, the Court should deny his request for issue

certification under Rule 23(c)(4).

<u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests the Court deny Plaintiff's

Motion for Class Certification.

37

10986507

**DEFENDANT UNIVERSITY
OF NEW HAVEN**

/s/ Linda L. Yoder_____
Linda L. Yoder (ct01599)
Michael A. King (ct29389)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.:   (860) 251-5000
Fax:   (860) 251-5219
lyoder@goodwin.com
mking@goodwin.com

-and-

Abigail W. Williams (*admitted pro hac vice*)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT 06901-3522
Tel.: 203-324-8144
Fax: 203-324-8199
awilliams@goodwin.com

38

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that, on this 1st day of April 1, 2022, a copy of the foregoing has been filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Linda L. Yoder
Linda L. Yoder

39

10986507