**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KRYSTIAN WNOROWSKI, individually and on behalf of all others similarly situated, | No. 3:20-cv 01589 (MPS) |
| Plaintiff, | |
| v. | |
| UNIVERSITY OF NEW HAVEN, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................5

II.  ARGUMENT ........................................................................................................5

   1.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method
   for Awarding Attorneys' Fees in Common Fund Cases .......................................5

   2.   A Fee Award of $500,000, 21.9% of the Gross Settlement Fund, is Consistent
   with Fees Awarded in Comparable Cases in this District ...................................8

   3.   The Fees and Costs Request Is Reasonable Under the Goldberger Factors .......9

      Class Counsel Have Devoted Substantial Time and Labor to Prosecuting the Action ........10

      The Action Involved Complex Legal Issues of Magnitude ...................................11

      The Risks of Prosecuting the Action Support the Requested Fee ..........................11

      Class Counsel Provided (and Continues to Provide) Quality Representation ......................13

      The Fee Request Is Reasonable in Relation to the Settlement .................................15

      Public Policy Considerations Support the Requested Fee ....................................17

   4.   The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-
   Check ...................................................................................................................18

   5.   Class Counsel's Costs Are Reasonable and Were Necessarily Incurred to
   Reach the Settlement ...........................................................................................21

   6.   The Reaction of the Settlement Class to Date Supports the Requested Fee .....22

   7.   Application for Service Awards to Class Representative ...................................23

III. CONCLUSION ...................................................................................................26

**TABLE OF AUTHORITIES**

Beech Cinema, Inc. v. Twentieth Century Fox Film Corp., 480 F.Supp. 1195 (S.D.N.Y.1979) - 16

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) -------------------------------------------------- 5,6

*Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) ------------------------------------------------------------------------------ 8, 20

*Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ----- 12

*Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018) ------------------------------------------------------------------------------- 9, 23

*Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ------------- --------------------------------------------------------------------------------------------14, 21

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). ------------------------------5,11

Greene v. Emersons, Ltd., [1987] Fed. Sec. L. Rep. (CCH) ¶ 93 (S.D.N.Y. May 20, 1987) ----- 15

Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 (3d Ed. Dec. 1992) ------- 16

*Hesse v Godiva Chocolatier*, 2022 US Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ------------ 16

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ------------------ 18

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) -------------------------------------------------------------------------------------- 18

*In re Fine Host Corp. Sec. Litig.*, No. 3:97-CV-2619 JCH, 2000 WL 33116538 (D. Conn. Nov. 8, 2000). ----------------------------------------------------------------------------------------- 14, 18

*In re Frontier Commc'ns Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022) ----------------------------------------------------------------------------------------------- 7

*In re Priceline.com, Inc., Sec. Litig.*, Master File 3:00-CV-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ------------------------------------------------------------------------------ 7, 8

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* No. 3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) --------------------------------------------------------------------------- 12, 13, 21, 23

*IN RE SYNCHRONY FINANCIAL SECURITIES LITIGATION, No. 3:18-CV-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023)*--------------------------------------------------------19,20

*Jermyn v. Best Buy Stores, L. P.*, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012-- 19, 20

*In re Visa Check/MasterMoney Antitrust Litig.*, No. CV-96-5238, 2004 WL 7333014, (E.D.N.Y. Apr. 27, 2004), --------------------------------------------------------------------------------- 22

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ----------------------------- 15

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,* No. 15-CV-1113 (VAB), 2016 WL 6542707, at *17 (D. Conn. Nov. 3, 2016)------------------------------------------------ 7, 15, 17, 22

*Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) -------------------------------------------------------------------------------------------------------- 17

*Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310 (S.D.N.Y. 1997)------------------ 16

*McDaniel v. County of Schenectady,* 595 F.3d 411 (2d Cir. 2010)--------------------------------- 5, 8

*McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010). ----------------------------------- 11

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) ------------------------------------------------------------------------------------------------------------- 6

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011). ------------------------------------------------------------------------------------------------------------ 16

*Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sep. 30, 2015) ------------------ 25

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) -------------------------------------------------------- 21

*See In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* No. 3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ------------------------------------------------------------------------------------- 12

*Simerlein v. Toyota Motor Corp.,* No. 3:17-CV-1091 (VAB), 2019 WL 2417404 (D. Conn. June 10, 2019)-------------------------------------------------------------------------------------------------------- 7

*Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2020 WL 4289955 (D. Conn. July 27, 2020). -------------------------------------------------------------------------------------------------- 24, 25

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.2002) --------------------------------------------- 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)----------------------------- 6

## I.   Introduction

Plaintiff Krystian Wnorowski moves under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees, reimbursement of expenses, and approval of a Service Award for Plaintiff in connection with the proposed class action Settlement entered with Defendant University of New Haven ("UNH", "New Haven", "Defendant"). The Court preliminarily approved the Settlement on June 12th, 2023 (ECF No. 141).

Class Counsel have not received any compensation for their prosecution of this litigation, which required more than two-and-a-half years of vigorous advocacy.  Plaintiff prevailed on motion to dismiss.  Further, the parties engaged in voluminous fact discovery, and Class Counsel reviewed thousands of pages of party documents, defended Plaintiff's deposition, moved for class certification, and vigorously opposed Defendant's motion for summary judgment while filing a motion for summary judgment of Plaintiff's own.

This litigation is an excellent result in complex, high-risk, hard-fought case that provides a substantial financial recovery for all students.  Thus, Class Counsel respectfully requests the Court approve an award of 21.9% of the Gross Settlement, or approximately $500,000.00 in attorneys' fees, $15,951.45, and $10,000.00 as a Service Award for Plaintiff.

## II.    Argument

### 1.  <u>A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases</u>

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated from that settlement fund for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir.

2000). The Second Circuit recognizes two methods by which attorney's fees may be assessed: (1) the "percentage of the fund" method; and (2) the lodestar method. *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

As stated by the Second Circuit in *Goldberger* and summarized by this district: "irrespective of the method used [to assess attorney's fees], the court must find that the resulting award is reasonable in light of: (1) "the time and labor expended by counsel"; (2) "the magnitude and complexities of the litigation"; (3) "the risk of the litigation"; (4) "the quality of representation"; (5) the requested fee's relationship to the settlement; and (6) "public policy considerations." *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815, at *4 (D. Conn. Jan. 25, 2011). As further described by the court in *Goldberger,* the purpose of the common fund doctrine is to compensate counsel fairly and adequately for their services rendered and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *Goldberger*, 209 F.3d at 47; see also *Boeing*, 444 U.S. 472 at 478 ("The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.").

The Second Circuit authorizes district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases, stating that "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 47.

In expressly approving this method, the Second Circuit recognized that "the lodestar method proved vexing" and resulted in "an inevitable waste of judicial resources." *Id.* at 49; *Savoie*

*v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("the percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases."). As described by the Supreme Court, lodestar multipliers, apart from difficulties in application, also fail to recognize risks assumed by attorneys with contingent fee agreements. *See, e.g.*, *City of Burlington v. Dague*, 112 S. Ct. 2638 (1992).

This District has held that "[t]he second method, the "percentage of the fund" method, sets a fee that is "a reasonable percentage of the total value of the settlement fund created for the class." *Goldberger*, 209 F.3d at 49. The general trend in this Circuit, as mentioned above, favors using the percentage method in common fund cases. *See Visa, U.S.A.*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method[.]")" *Simerlein v. Toyota Motor Corp.,* No. 3:17-CV-1091 (VAB), 2019 WL 2417404, at *23 (D. Conn. June 10, 2019).

Additionally, "[a]s this Court has previously noted, however, '[m]any courts in the Second Circuit favor the percentage of fund method for awarding attorneys' fees in class action settlements.'" *Kemp-DeLisser,* 2016 WL 6542707, at *15 (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 121); *See also Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714 (VAB), 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018).

Supporting the favorability for percentage of the fund method even further, this District has held "[t]he Court finds that the requested fee is reasonable under the percentage-of-the-fund method of calculating attorneys' fees. The requested percentage is within the range of percentages awarded in the Second Circuit in comparable class action." *See, e.g.*, *In re Priceline.com, Inc., Sec. Litig.*, Master File 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (approving attorneys' fee award of 30% of the settlement fund and listing other Second Circuit cases that approved between 25-33 1/3% of the settlement fund in attorneys' fees); *see also In re*

*Frontier Commc'ns Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324, at *15 (D. Conn. May 20, 2022).

The background of fee decisions, the process for determining the reasonability of such fee awards, and the process for such fee awards has been well documented by courts within this Circuit. In short, attorneys' fees can be decided on a percentage basis, as discussed earlier, and will be compared against the lodestar amount of hours. *In re Frontier Commc'ns Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324, at *5 (D. Conn. May 20, 2022)(recognizing the use of the lodestar "as a baseline even if the percentage method is eventually chosen" and encouraging "the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage") (internal citations omitted).

Accordingly, both the lodestar and the percentage funds methods can be used by district judges when calculating attorney's fees in common fund cases. *In re Frontier Commc'ns Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324, at *5 (D. Conn. May 20, 2022); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.").

## 2. **A Fee Award of $500,000, 21.9% of the Gross Settlement Fund, is Consistent with Fees Awarded in Comparable Cases in this District**

Throughout the Second Circuit as well as this District in specific, a fee award totaling nearly 21.9% percent of the gross settlement fund is reasonable and is below the typical fee awards approved within the Second Circuit. *See Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014)("The one-third amount that Plaintiffs request is typical of fee awards in this Circuit." (internal citations omitted).

As discussed by this Court in *Frontier* "[t]he Court finds that the requested fee is reasonable under the percentage-of-the-fund method of calculating attorneys' fees. The requested percentage is within the range of percentages awarded in the Second Circuit in comparable class action." *In re Frontier Commc'ns Corp.*, No. 3:17-CV-01617-VAB, 2022 WL 4080324, at *15 (D. Conn. May 20, 2022); *See, e.g.*, *In re Priceline.com, Inc., Sec. Litig.*, Master File 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (approving attorneys' fee award of 30% of the settlement fund and listing other Second Circuit cases that approved between 25-33 1/3% of the settlement fund in attorneys' fees).

Furthermore, courts within the Second Circuit have held "[t]he federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the **gross settlement benefit,**" which includes the value of both monetary and nonmonetary relief, and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Fleisher v. Phoenix Life Ins. Co.,* No. 11-CV-8405 (CM), 2015 WL 10847814, at *12 (S.D.N.Y. Sept. 9, 2015).

Here, the requested fee award in this matter is $500,000. The gross settlement value of this case is $2,285,600.00. As such, the gross settlement benefit is less than 22% of the gross settlement fund. This is well on the lesser end of the above-mentioned settlements. Based on these factors, Class Counsel's fee request is reasonable under a percentage-of-recovery analysis and supported by each of the *Goldberger* factors.

**3.   The Fees and Costs Request Is Reasonable Under the Goldberger Factors**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case: "(1) the time and labor expended

by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. As discussed in more detail below, pursuant to these factors set forth by the Second Circuit, here, Class Counsel's requested fee of less than 22% is reasonable.

### ***Class Counsel Have Devoted Substantial Time and Labor to Prosecuting the Action***

The time and effort expended by Class Counsel in prosecuting the Action and achieving the Settlement support the requested fee. Class Counsel have dedicated their time, effort, and expense to this litigation, and they have done so entirely on a contingent basis, with no guarantee of compensation or even reimbursement of costs.

As set forth in greater detail in the Declaration of attorney Paul Doolittle, Class Counsel diligently investigated the claims, defenses, and underlying events and transactions that are the subject of the Action, and invested substantial time and resources into the prosecution of the Action, including, among other things: (1) relentlessly pursuing and reviewing thousands of university records; (2) briefing and defeating Defendant's motion to dismiss; (3) engaging in extensive written discovery; (4) deposing Defendant's administrators and officials; (5) preparing and filing motions for class certification and summary judgment; (6) one full day and substantial follow up mediation sessions via zoom and phone; and (7) engaging in months of settlement negotiations. (Decl. of Paul Doolittle, ¶ 7.)

In connection with this work, Class Counsel expended a total of 1,915.9 hours with a lodestar value of $866,452.80. (*Id*. ¶ 11.) At all times, Class Counsel took care to staff the matter efficiently and avoided unnecessary duplication of effort. (*Id*. ¶ 13.) Accordingly, Class Counsel

and Class Representatives respectfully submit that the time and labor dedicated to the Actions support the fee request.

### *The Action Involved Complex Legal Issues of Magnitude*

There is no question that during the more than two-and-a-half years of litigation, Plaintiff face, and Plaintiff's counsel resisted, defenses to liability and damages.  Defendant continues to deny liability and there is no assurance that Plaintiff would have prevailed at class certification or summary judgment.  Covid-19 tuition and fee litigation faces significant legal hurdles related to, *inter alia*, causation and damages.  In short, this was not a simple, familiar type of case with a clear path to liability and judgment, and this litigation could have continued for several years had it not settled.  Precedents in similar cases have had mixed outcomes for plaintiff students, and the question of whether the thousands of students impacted in this litigation are entitled to refunds is of great magnitude.  Plaintiff's Counsel worked diligently to achieve a significant result for the Settlement Class in the face of very real litigation risks.  Accordingly, this factor supports the reasonableness of the requested attorneys' fee award.

### *The Risks of Prosecuting the Action Support the Requested Fee*

As mentioned above, this matter was a risky pursuit as it dealt  with novel and undeveloped law. The Second Circuit has said "[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered in assessing the propriety of the multiplier." *McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010). "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. At the time this case was filed, there were complex issues of fact and law that have yet to be truly decided, given the nature of appeals, the hierarchy of court systems, as well as the federalist bifurcation of state and federal

courts. This is especially true where, as here, liability depends on Plaintiff's ability to establish elements requiring subjective determinations of fact.

As well stated by this District:

"In considering the risk of litigation as it pertains to fee awards, Courts in this circuit may consider several types of risk. The most salient is the attorneys' risk in accepting a case on a contingency fee for, as the Second Circuit has noted '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.' " *In re Giant,* 279 F.R.D. at 164 (quoting *Grinnell,* 495 F.2d at 570). Here Lead Counsel undertook this action on a wholly contingent-fee basis, devoting substantial resources to the prosecution of this action for nearly three years. *Maley,* 186 F.Supp.2d at 372 ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.") (internal quotation marks and citation omitted). Here the contingency risk facing Lead Counsel supports the requested award."

*See In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* No. 3:09CV1293 VLB, 2012 WL 3589610, at *12 (D. Conn. Aug. 20, 2012).

Much like in *In Re Sturm, Ruger, & Co., Inc. Sec. Litig.*, the current matter involves a fully contingent fee. In sum, Class Counsel has devoted nearly 900,000 dollars' worth of time to their efforts in pursuing this case, all of which with no reimbursement. Class Counsel has endured in pursuing this matter for nearly three years and was ready and able to continue pursuing this matter at trial.

Class Counsel believes the claims are meritorious, tempered by the risks associated with continuing to prosecute the Action. The risk of prosecuting this action is immense. This is demonstrated by the sheer number of analogous cases that have failed and resulted in thorough defeat for deprived students. Many cases do not survive the motion to dismiss stage of litigation. Many others also fail on summary judgment. If this case were to fall into one of these categories, Plaintiff and members of the Class would receive nothing.

As mentioned above, Class Counsel undertook and litigated this case on a fully contingent basis. "Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case." *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010). "In considering the risk of litigation as it pertains to fee awards, Courts in this circuit may consider several types of risk. The most salient is the attorneys' risk in accepting a case on a contingency fee for, as the Second Circuit has noted '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.' *In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* No. 3:09CV1293 VLB, 2012 WL 3589610, at *12 (D. Conn. Aug. 20, 2012).

From the outset, Class Counsel understood that it was embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the costs entailed. Accordingly, the contingency risk in this case supports the requested fee award.

### *Class Counsel Provided (and Continues to Provide) Quality Representation*

When evaluating *Goldberger*'s "quality of representation" factor, courts in the Second Circuit and this District find that the magnitude and complexities of the litigation and the quality of representation by plaintiffs' counsel weigh in favor of a percentage award within a close range of the one-third award requested. "The Court of Appeals has held that "the quality of representation is best measured by results, and that such results may be calculated

by comparing 'the extent of possible recovery with the amount of actual verdict or settlement." ' *Id.* at 55 (citation omitted).

Moreover, the Second Circuit also noted that it has "historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement" under a lodestar calculation. *Id.* at 54 (citation omitted). In this context, "[r]isk falls along a spectrum, and should be accounted for accordingly." *Id.* "For example, [the Second Circuit has] held that public policy considerations justified the award of no contingency allowance in a case that was risky simply because it was of 'highly questionable merit," ' and "[s]imilarly, there are cases where the risk is 'so slight' that any enhancement for the contingent nature of the fee must be 'minimal." ' *Id.* (citations omitted)." *In re Fine Host Corp. Sec. Litig.*, No. 3:97-CV-2619 JCH, 2000 WL 33116538, at *4 (D. Conn. Nov. 8, 2000).

Class Counsel practices extensively in complex federal civil litigation, particularly the litigation of consumer protection, breach of contract, and false advertising class actions and have successfully litigated these types of actions in courts throughout the country. In particular, the Director of Class Counsel's division has three decades worth of experience in litigating in federal court, with extensive focus on multi-district litigation matters and class action suits. Much of class counsel's experience has stemmed from matters related to the September 11th attacks, as well as asbestos and tobacco matters. (See Decl. of Paul Doolittle, ¶ 19, Ex. A (Poulin | Willey | Anastopoulo, LLC resume). Here, Class Counsel brought to bear decades of collective experience prosecuting class actions into the nearly 2,000 hours devoted to this litigation. (Id. ¶ 11.)

Beyond general qualifications, this factor is satisfied by the fact that Class Counsel obtained a settlement in which Defendant New Haven agreed to create a $1 million common fund, with over $2.2 million in total value to provide restitution to Settlement Class Members.   Class

Counsel's ability to obtain this substantial recovery from an aggressive, well-funded defendant like New Haven, represented by well-reputed counsel Shipman & Goodwin, LLP, is a testament to the skill with which Class Counsel have prosecuted this case. *See Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *16 (D. Conn. Nov. 3, 2016) (" "[T]he quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). *See also Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *71 (S.D.N.Y. Sep. 9, 2015) ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country.")

The Settlement represents a highly favorable result for the Settlement Class, attributable to the diligence, determination, and hard work by Class Counsel, who developed, litigated, and successfully negotiated the Settlement against a highly skilled and determined defense team, backed by a client with substantial resources. Accordingly, the quality-of-representation factor weighs heavily in favor of supporting Class Counsel's Fees and Costs Request.

### *The Fee Request Is Reasonable in Relation to the Settlement*

A fee application is reasonable in relation to a settlement where the amount requested is consistent with fees awarded in similar class-action settlements of comparable value. Courts in this Circuit recognize that large, complex class actions present considerable risk and require extensive work by counsel. As noted, the Settlement provides the Settlement Class with a cash benefit, and non-cash benefit, that was achieved despite the substantial obstacles and risks faced by Class Counsel in prosecuting the Actions. Fees amounting to one-third of the common fund are within the range that are regularly awarded by courts in the Second Circuit, particularly where, as

here, the requested fee is *less* than the total lodestar amount. Courts often compare a proposed fee award in a class action to the lodestar, or a "lodestar cross-check" as a final "sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,* No. 15-CV-1113 (VAB), 2016 WL 6542707, at *17 (D. Conn. Nov. 3, 2016).

"Traditionally, federal courts have awarded fees in the 20% to 50% range in class actions. *Id.* (awarding approximately 25% of fund and collecting cases); *see, also, Greene v. Emersons, Ltd.,* [1987] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) (46.2% of common fund in securities case awarded as fees and expenses); *In re Ampicillin Antitrust Litig.,* 526 F.Supp. 494 (D.D.C.1981) (45% of $7.3 million settlement fund awarded in fees and expenses); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.,* 480 F.Supp. 1195 (S.D.N.Y.1979) (53% of settlement fund). Fifty percent of the fund appears to be an approximate upper limit on fees and expenses. *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 14.03, at 14–13 (3d Ed. Dec. 1992)." *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997)

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815, at *4 (D. Conn. Jan. 25, 2011).

Here, the proposed award is less than 22% of the proposed award and same is only 44% *less* than Class Counsel's total lodestar. (See Decl. of Paul Doolittle). Given that the proposed

award is less than one third of the total settlement fund and the settlement value is *less* than the lodestar, this proposed settlement fund falls well within the range of permissible settlements.

### ***Public Policy Considerations Support the Requested Fee***

Public policy also strongly supports the requested Fees and Costs Award. The social and monetary value of this matter is large. Thousands upon thousands of college students paid tens of thousands of dollars for college individually and were deprived of their benefit of the bargain in regard to their tuition. *See Hesse v Godiva Chocolatier*, 2022 US Dist. LEXIS 72641, at *40 (S.D.N.Y. Apr. 20, 2022) ("the Second Circuit 'take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'"). More specific to this District: Class Counsel's fees "should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *17 (D. Conn. Nov. 3, 2016).

Similar to age and hour disputes, the action itself involves many class members with small claims against one sole defendant, and many of the Class Members would not have been able to bring their actions given the value of such actions. *See Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) "public policy favors a common fund attorneys' fee award, Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." (internal citations omitted).

Had Class Counsel not taken on the risk of prosecuting this action, and had Class Counsel not been equipped with the skills and resources necessary to pursue the claims vigorously, the Settlement Class would have recovered nothing, and important public interests would not have

been vindicated. Thousands of deprived college students would have no remedy for their lost funds, as legislatures took no action in favor of college students, and some state lawmakers even passed laws granting immunity to the universities who deprived students of their benefit of the bargain.[1] As illustrated, without Class Counsel, Class Members would have no remedy for their losses.

Awarding a reasonable percentage of the common fund properly motivates zealous enforcement of laws and incentivizes skilled counsel to bring meritorious cases even where, at the outset, the prospect of any recovery is uncertain, and the costs are daunting. "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.")." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010).

Plaintiffs' counsel in such cases are typically retained on a contingent basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. Furthermore, the significant expense, combined with the high degree of uncertainty of success, means that contingency fees are virtually the only means of recovery in such cases. Class Counsel assumed substantial risk by prosecuting the Actions and achieved a significant benefit to the Class. Awarding attorneys' fees adequately compensating counsel serves an important public policy interest. Accordingly, public policy supports Class Counsel's requested fee.

4.  **The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check**

---

[1] https://www.ncleg.gov/Sessions/2019/Bills/Senate/PDF/S208v5.pdf

The lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). More specific to this District, in reference to the lodestar method: "However, "[s]ince at least the late 1980s[,] the trend within this circuit has been toward the percentage-of-recovery method." *In re Fine Host Corp. Sec. Litig.*, No. 3:97-CV-2619 JCH, 2000 WL 33116538, at *2 (D. Conn. Nov. 8, 2000).

Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. As well defined by this District: "The Second Circuit has also recognized the use of the lodestar "as a baseline even if the percentage method is eventually chosen" and "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *IN RE SYNCHRONY FINANCIAL SECURITIES LITIGATION*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *4 (D. Conn. Aug. 4, 2023).

"Under the lodestar approach, the Court multiples the number of hours reasonably worked by what the Court deems to be a reasonable hourly rate." *Trustees of Loc. 478 Annuity Fund v. J.A.M. Constr. Co., LLC,* No. 3:18-CV-1115 (JBA), 2019 WL 2191796, at *2 (D. Conn. Jan. 11, 2019), No. 3:18-CV-1115 (JBA), 2019 WL 2188912 (D. Conn. Mar. 6, 2019); *See, also*, *In re Flag Telecom Holdings*, 2010 U.S. Dist. LEXIS 119702, at *76 (S.D.N.Y. Nov. 5, 2010), at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagements, the

skill of the attorneys, and other factors.") The lodestar cross-check confirms that Class Counsel's request is reasonable.

Class Counsel billed 1,915.9 hours prosecuting the Action. (Decl. of Paul Doolittle, ¶ 11.) At the prevailing market rate per the Laffey matrix, these hours translate into $866,452.80 total lodestar as of August 9, 2023. (*Id*.) As such, Class Counsel's request for $500,000 in attorneys' fees represents a negative lodestar multiplier of approximately .44, or 56% of the total lodestar amount. (*Id*.) Courts in this District and circuit, along with many others, find that a negative lodestar multiplier supports an inference that the fee request is reasonable. "Having reviewed the lodestar crosscheck calculation, the Court concludes that a negative lodestar multiplier of 0.7 is reasonable because positive multipliers are frequently awarded in comparable securities class actions. *IN RE SYNCHRONY FINANCIAL SECURITIES LITIGATION, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at \*11 (D. Conn. Aug. 4, 2023)*; *Jermyn v. Best Buy Stores, L. P.*, 2012 U.S. Dist. LEXIS 90289, at *26-27 (S.D.N.Y. June 27, 2012) ("Here the lodestar multiplier is negative, and this is further indication of the reasonableness of the negotiated fee.")

As documented by this district, the negative lodestar multiplier is exceedingly modest in comparison to the range commonly awarded multiples as high as eight:

> "In fact, "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. 467, 2013 WL 1803736, at \*13; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052–54 (9th Cir.2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at \*13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at \*27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. Broad Co.*, 248 Fed. Appx. 780, 783 (9th Cir.2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at \*4 (S.D.N.Y. Feb.24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F.Supp.2d at 184– 86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT &*

> *T Operations, Inc.,* No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D.Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.,* No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D.Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 803 (S.D.Tex.2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 768 (S.D.Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.,* 362 F.Supp.2d 587, 589–90 (E.D.Pa.2005) (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y. Jan.29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.,* No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug.24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan,* 759 F.Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74)."

*Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014).

Class Counsel will also continue to incur fees throughout the remaining final approval process. In specific, Class Counsel will prepare and finalize Class Representative's final approval motion, correspond with the Notice Administrator, respond to any objections that may be filed, and prepare for and travel to the final approval hearing.

Therefore, the lodestar cross-check supports the reasonableness of the requested fees.

## 5.  <u>Class Counsel's Costs Are Reasonable and Were Necessarily Incurred to Reach the Settlement</u>

Under the common fund doctrine, Class Counsel is customarily entitled to reimbursement of reasonable costs incurred in the litigation. Fed. R. Civ. P. 23(h); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of costs where a common fund has been produced or preserved for the benefit of a class); Alba Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004); "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *14 (D. Conn. Aug. 20, 2012) *Fleisher*, 2015 U.S. Dist.

LEXIS 121574, at *76-77 (noting as typical costs in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation.")

Class Counsel's fee application includes a request for payment of litigation costs, which were reasonably incurred and necessary to prosecute the Action. Class Counsel incurred $ $15,951.45 in reasonable and necessary litigation costs. (Decl. of Paul Doolittle, ¶ 14.) These costs include all filing, general litigation, expert costs, discovery costs, travel, and mediation-related expenses that were incurred in the normal course of business and were essential to the successful prosecution of this lawsuit. (*Id.* ¶ 15.) Class Counsel is entitled to be reimbursed for these costs.

Courts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016). None of Class Counsel's expenditures have yet been reimbursed. (Decl. of Paul Doolittle ¶ 16) Indeed, "[t]he fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *77. In sum, there is "no reason to depart from the common practice in this circuit of granting expense requests." *In re Visa Check/MasterMoney Antitrust Litig.*, No. CV-96-5238, 2004 WL 7333014, at *3 (E.D.N.Y. Apr. 27, 2004), subsequently aff'd sub nom. *Wal-Mart Stores, Inc. v. Buholzer*, 156 F. App'x 346 (2d Cir. 2005).

As such, Class Counsel therefore respectfully request that litigation costs in the amount of $15,951.45 be reimbursed as they were reasonable and necessary to pursuing this action.

**6.** **The Reaction of the Settlement Class to Date Supports the Requested Fee**

The reaction of Class members to the Settlement and Class Counsel's fee and litigation expense request, which was disclosed in the Notice disseminated on June 12, 2023, confirms the reasonableness of Class Counsel's request.

As stated by this District:

> "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, 425 (S.D.N.Y.2001). The parties have indicated that the reaction of the class has been favorable. Notice regarding the Settlement has been sent to over 19,500 potential class members and not a single objection has been received. "[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins,* 700 F.Supp. 682, 684 (S.D.N.Y.1988)."

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* No. 3:09CV1293 VLB, 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012).

The Notice informed members of the Settlement Class that Class Counsel intended to seek a Fees and Costs Award of up to $500,000 of the Settlement Fund. (Dkt. 138, Ex. A.) This request is consistent with the Notice provided.

The Settlement has been well received by the Class and overwhelmingly positive with zero objections to date. (Decl. of Paul Doolittle ¶ 18) Class Counsel will also submit an updated report from the Notice Administrator regarding the number of valid claims submitted, units claimed, average class member payout, and any objections/opt-outs before the final approval hearing.

**7.  Application for Service Awards to Class Representative**

Class Counsel moves for a $10,000 Service Award to Class Representative for his participation and dedication to this litigation. In this district "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any

other burdens sustained by the plaintiffs." *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714 (VAB), 2018 WL 3715273, at *13 (D. Conn. Aug. 3, 2018).

Such awards are designed to reimburse representative plaintiffs, who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016). Incentive awards to representative plaintiffs in class action cases "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Id.,* at *18.

Further detailed by this district is: "[i]n examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." *Strauch v. Computer Scis. Corp.,* No. 3:14-CV-956 (JBA), 2020 WL 4289955, at *18 (D. Conn. July 27, 2020).

All of the above considerations favor Plaintiff's reception of a service award. Plaintiff's risk is great, as Plaintiff was still a student at New Haven during the pendency of this litigation, and nationally, student plaintiffs regularly received scrutiny for bringing these types of cases.[2] Further, Plaintiff faced, and still faces, great risks outside of the college setting in an ever so competitive job market in which Plaintiff has and/or will likely have to disclose of his involvement in a lawsuit against his own alma mater. And, as described by this district: "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for

---

[2] https://www.marketwatch.com/story/unprecedented-lawsuits-from-students-suing-colleges-amid-the-coronavirus-outbreak-raise-3-thorny-questions-for-higher-education-2020-05-21;
https://www.npr.org/2020/05/29/863804342/colleges-face-student-lawsuits-seeking-refunds-after-coronavirus-closures ; https://lawecommons.luc.edu/cgi/viewcontent.cgi?article=1017&context=lclr

assuming the risk of such for the sake of absent class members." *Strauch,* No. 3:14-CV-956 (JBA), 2020 WL 4289955, at *18 (D. Conn. July 27, 2020).

Moving to the second factor, Plaintiff's time and effort in this litigation is extensive and well documented. Throughout this process, Plaintiff has been completely responsive to discovery and has sat for deposition. In total, Plaintiff has spent dozens and dozens of hours in this matter. In sum, this matter for Plaintiff was a voluntary donation of his time, and took on this obligation to represent his fellow roughly 7,000 other students.

The final factor in the above calculations, that of the ultimate recovery, also weighs in favor of Plaintiff's reception of a service award. In total, Plaintiff's efforts recovered $1,000,000 in cash and a total of $2,285,600 in total recovery in non-cash benefits for the Class Members. Plaintiff's efforts result in a major guaranteed recovery for Class Members, rather than a long, prolonged, and possibly ineffective lawsuit with no recovery, similar to many other analogous suits.

An aggregate of $10,000 in Service Awards for the Class Representative represents less than 1% (approximately 0.44%) of the Settlement Fund, which a modest request that is fair to the Settlement Class. *See, e.g.*, *Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530, at *48 (S.D.N.Y. Sep. 30, 2015) (finding service awards representing approximately 0.52% of the settlement fund within the range commonly approved in this district and collecting cases where service awards totaled between 1.7% and 9.1% of the settlement.)

Indeed, the requested service award of $10,000 is squarely within the range typically awarded to individual named plaintiffs in comparable cases in this Circuit. Finally, the requested $10,000 service award is "consistent and reasonable with awards given in class and collective actions." *Strauch v. Computer Scis. Corp.,* No. 3:14-CV-956 (JBA), 2020 WL 4289955, at *18 (D. Conn. July 27, 2020). As such, the requested service award is reasonable and should be granted.

### III.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the request for: (i) the payment of attorneys' fees in the amount of 21.9% of the Gross Settlement Fund totaling $500,000; (ii) reimbursement of reasonable and necessary litigation costs in the amount of $12,039.54; and (iii) a $10,000 service award for Plaintiff.

Dated: August 11, 2023

Respectfully Submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle
Blake G. Abbott
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
          blake.abbott@poulinwilley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11th, 2023, I caused a true and correct copy of the foregoing to be served on counsel of record by electronic filing it with the Clerk of Court using the ECF system, which will send notification of such filing to the registered participants.

<u>*/s/ Paul Doolittle*</u>
Paul Doolittle